756 So.2d 852 (2000)
Dedrick JONES, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00415-COA.
Court of Appeals of Mississippi.
February 15, 2000.
Certiorari Denied May 25, 2000.
*854 John D. Watson, West Memphis, AR, Attorney for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
EN BANC.

ON MOTION FOR REHEARING
MOORE, J., for the Court:
¶ 1. The motion for rehearing filed in this matter is denied. The original opinion issued in this case is withdrawn, and the following opinion is substituted therefore.
¶ 2. Appellant Dedrick Jones was indicted by a Desoto County grand jury for simple assault upon a law enforcement officer. *855 Following a trial, the jury found Jones guilty of the crime charged. The circuit court sentenced Jones to five years imprisonment in the custody and control of the Mississippi Department of Corrections, said sentence to run consecutively to any sentences Jones was currently serving and any other previously imposed. Aggrieved, Jones cites the following issues on appeal:
I. WHETHER THE TRIAL COURT ERRED IN DENYING JONES'S MOTION TO DISMISS ON SPEEDY TRIAL GROUNDS;
II. WHETHER THE TRIAL COURT ERRED IN DENYING JONES'S MOTION FOR DIRECTED VERDICT;
III. WHETHER THE TRIAL COURT ERRED IN DENYING JONES'S PEREMPTORY INSTRUCTION AND GRANTING THE STATE'S S-1 INSTRUCTION; AND
IV. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

STATEMENT OF THE FACTS
¶ 3. October 22, 1997, Sergeant Chris Sing, a shift supervisor for the Hernando Police Department, was out on a routine patrol when he noticed Appellant Dedrick "Deck" Jones acting suspiciously. Sgt. Sing approached Jones who then walked up to a residence. Jones stopped in the threshold of the residence and turned around to look back at Sgt. Sing. His suspicions aroused, Sgt. Sing radioed his communications officer to determine whether Jones had an outstanding arrest warrant. The communications officer informed Sgt. Sing that Jones had a warrant out for his arrest. After responding to an unrelated alarm call, Sgt. Sing saw Officer Steve Atkinson, a patrolman for the Hernando Police Department, and asked him to help execute the warrant for Jones's arrest. Sgt. Sing and Officer Atkinson each drove his own patrol car.
¶ 4. Sgt. Sing and Officer Atkinson drove back to the vicinity where Sgt. Sing last saw Jones. They saw Jones on Park Street, in the same area where he was before. Sgt. Sing and Officer Atkinson both parked their patrol cars. Sgt. Sing advised Jones that he had a warrant for his arrest. Jones ran. Officer Atkinson pursued Jones on foot through a woman's backyard. Sgt. Sing returned to his patrol car and drove around the block to cut Jones off. Officer Atkinson chased Jones down a hill into a wooded lot. Officer Atkinson testified that when he reached the bottom of the hill, Jones stopped and took an aggressive posture with his fists raised. Hoping to knock Jones off balance, Officer Atkinson tried to run into Jones. Jones did not fall, but Officer Atkinson fell forward. Officer Atkinson testified that Jones then got behind him and hit him in the back several times. Officer Atkinson was not wearing his bulletproof vest. According to Officer Atkinson, he and Jones scuffled for a few seconds, and he got Jones down in a kneeling posture. Officer Atkinson held Jones by the jacket, who then slipped his arms out of the jacket and took off running again. At this point, Sgt. Sing had arrived on the scene. Sing and Atkinson together apprehended Jones who had tripped and fallen over some bushes.
¶ 5. Sgt. Sing did not witness the scuffle between Officer Atkinson and Jones. He did, however, observe that both Atkinson and Jones were breathing hard and Atkinson's uniform was in disarray. Sgt. Sing also noticed that Officer Atkinson's finger was bleeding profusely.
¶ 6. Jones's version of the events differed somewhat. He denied that Sgt. Sing told him that he had a warrant for his arrest. He admitted, however, that he ran from Sgt. Sing and Officer Atkinson. Jones stated: "I didn't have no [sic] reason for running. You know, he told me to come here, so I just fleed [sic]." Jones testified that he fell when Officer Atkinson caught up with him, that Atkinson grabbed him by the jacket, and that he slipped out of the jacket and ran again. Jones testified *856 that there was no physical contact between Atkinson and him. Jones emphatically denied hitting Officer Atkinson in the back.
¶ 7. Officer Atkinson testified that he injured his finger at some point during his fight with Jones. Atkinson sought medical attention for his injured finger, but did not seek attention for his back. Officer Atkinson did not miss any work due to his injured finger or his back. He testified that he experienced back pain on the day Jones hit him but that the pain had disappeared by the next day. Jones was arrested and charged with simple assault upon a law enforcement officer.

LAW AND ANALYSIS

I. DID JONES RECEIVE HIS CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL?
¶ 8. Jones asserts the State violated his right to a speedy trial under U.S. Const. amend. VI and Miss. Const. art. 3, § 26.[1] To determine whether Jones's constitutional rights were observed, this Court must examine Jones's case under the four factors listed in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). These factors are length of the delay, reason for the delay, the defendant's assertion of his speedy trial right, and prejudice to the defendant resulting from the delay. Id. at 533, 92 S.Ct. 2182. "The weight given each [factor] necessarily turns on the peculiar facts and circumstances of each case, the quality of evidence available on each factor and, in the absence of evidence, identification of the party with the risk of non-persuasion. No one factor is dispositive." Jaco v. State, 574 So.2d 625, 630 (Miss.1990). See Skaggs v. State, 676 So.2d 897, 900 (Miss. 1996); Taylor v. State, 672 So.2d 1246, 1258 (Miss.1996).
¶ 9. The relevant procedural history follows: Jones was arrested for simple assault upon a law enforcement officer on October 22, 1997. He posted a bond the same day and was released from prison. On October 27, 1997, Jones was arrested on two charges of cocaine possession. He was incarcerated December 17, 1997; the record is not clear why he was incarcerated on this date. On March 26, 1998 the Desoto County grand jury indicted Jones for simple assault of a law enforcement officer. Jones waived arraignment and pled not guilty on April 28, 1998. Also, on April 28, 1998 Jones's parole on a prior criminal conviction was revoked due to the cocaine possession charges. On May 5, 1998 a jury convicted Jones for possession of cocaine, and the trial court sentenced him on the same day. On June 17, 1998 the judge who revoked Jones's parole for the drug charges, amended his revocation order naming as additional revocation grounds a subsequent charge against Jones for capital rape. On July 7, 1998 Jones filed a demand for speedy trial in the present case. On August 31, 1998 Jones filed a motion to dismiss on speedy trial grounds, and the circuit court heard and denied the motion. On September 24, 1998 the case was tried before a jury, and Jones was convicted of simple assault upon a law enforcement officer.

A. Length of Delay
¶ 10. Unlike the statutory right to a speedy trial, provided in Miss.Code Ann. § 99-17-1 (Rev.1994), which attaches on the date the accused is arraigned, the constitutional right to a speedy trial attaches on the date the defendant effectively stands accused. Beavers v. State, 498 So.2d 788, 790 (Miss.1986). See Skaggs, 676 So.2d at 900 overruled on other grounds in State v. Ferguson, 576 So.2d 1252, 1255 (Miss.1991); State v. Magnusen, 646 So.2d 1275, 1278 (Miss.1994); Smith v. State, 550 So.2d 406, 408 (Miss. *857 1989). The Mississippi Supreme Court has repeatedly held the date the defendant effectively stands accused is the date of the accused's arrest. Taylor, 672 So.2d at 1257; Magnusen, 646 So.2d at 1278; Smith, 550 So.2d at 408. In the present case, the constitutional clock began ticking on the date of Jones's arrest, October 22, 1997.
¶ 11. A delay of eight months or more between the day the right to a speedy trial attaches and the accused's trial is presumptively prejudicial. Taylor, 672 So.2d at 1258; Flores v. State, 574 So.2d 1314, 1322 (Miss.1990); Smith, 550 So.2d at 408. Jones was tried 322 days after his arrest, a delay of approximately eleven months. Although the delay is presumptively prejudicial under the above authority, the delay does not automatically establish that Jones was denied his right to a speedy trial. Instead, the delay merits a closer examination of the remaining Barker factors. Skaggs, 676 So.2d at 900; Magnusen, 646 So.2d at 1280; Smith, 550 So.2d at 406.

B. Reason for Delay
¶ 12. The burden is on the State to provide an accused person with a speedy trial. Skaggs v. State, 676 So.2d at 900. Delays which are not attributable to the defendant count against the State unless the State shows good cause for the delay. Id. at 901. In denying Jones's motion to dismiss on speedy trial grounds, the circuit court observed that Jones's trial was delayed because Jones and the State were involved in plea negotiations, because the court tried an older murder case on the date originally set for Jones's trial, and because of the court's "extremely crowded" criminal docket. Further, the trial court noted that Jones was tried on another criminal case on May 5, 1998.
¶ 13. The trial court found as part of its good cause inquiry that Jones and the State were involved in ongoing plea negotiations, which were initiated by the State after Jones's May 5th conviction on drug possession charges. Plea negotiations can constitute good cause for delay. Taylor, 672 So.2d at 1259. Jones testified at his speedy trial hearing that he never expressed any interest in accepting the plea bargain offered by the State. The record reflects some controversy regarding when the defendant informed the State that he was not interested in a plea bargain. Since the State did not offer any documentation to substantiate its claim of plea negotiations, this Court must decline to credit the State with the delay caused by such. Id.
¶ 14. The trial court further noted that it had gotten off more than 1,800 cases from its criminal docket in the year prior to Jones's speedy trial hearing. On the day Jones's trial was originally set, the court tried a murder case, over a three day period, which had been on the docket longer than Jones's assault case. While a crowded docket alone will not establish good cause, "the specific facts of the case may give rise to good cause." Magnusen, 646 So.2d at 1282. Even if a crowded docket does not establish good cause in a particular case, "[d]elays caused by overcrowded dockets are not to be weighed heavily against the State." Id. Given that the State has the ultimate responsibility to timely bring a case to trial, Magnusen, 646 So.2d at 1281, ( citing Barker, 407 U.S. at 531, 92 S.Ct. 2182), this Court holds the State has not shown good cause for the delay. However, since the delay was only three months over the presumptively prejudicial time period, and since there has been no allegation that the State deliberately delayed the trail, we do not weigh the length of delay heavily against the State.

C. Assertion of the Right
¶ 15. "Although it is the State's duty to insure that the defendant receives a speedy trial, a defendant has some responsibility to assert this right. (cites omitted). Failure to assert the right will make *858 it difficult for a defendant to prove that he was denied a speedy trial." Taylor, 672 So.2d at 1261 (quoting Barker, 407 U.S. at 531-32, 92 S.Ct. 2182). Jones asserted his right to a speedy trial July 7, 1998, approximately nine months after his arrest. He moved to dismiss his case on speedy trial grounds August 31, 1998. Twenty-four days later, Jones was tried and convicted. While delay in asserting the right to a speedy trial does not constitute a waiver to the right, it is a factor to consider in the overall balancing process.

D. Prejudice to Defendant
¶ 16. This Barker factor "seeks to prevent oppressive pretrial incarceration, minimize anxiety and concern of the accused, and to limit the possibility that the defense will be impaired by the inability to locate witnesses or by failing memories of witnesses." Id. Pretrial incarceration will not alone justify reversal. Id. The record clearly reveals that Jones was released on a bond on the same day he was arrested for the crime involved in the present case. He returned to prison on December 17, 1997, but the record is not clear whether his return to prison was for the charges in the present case, for the parole revocation, or for the subsequent drug or rape charges. Assuming that Jones's December 17 arrest was for the simple assault case, his incarceration for such only lasted until his parole revocation on April 28. Further, Jones began serving his sentence for the drug possession conviction on May 5. The most Jones was incarcerated for the simple assault charge was four months, from December 17 to April 28. This period is debatable; however, since the record does not clearly reflect why he was arrested in December.
¶ 17. Jones testified at his speedy trial hearing that he was "stressed out" due to the State's delay in bringing him to trial. While it is normal to experience a certain amount of stress awaiting trial on a criminal charge, this Court finds that much, if not all, of Jones's stress was attributable to the more serious drug and capital rape charges pending against him. While Jones "may have had a right to be anxious and concerned, not all of his woes and tribulations were a product of the charges preferred in this case." Magnusen, 646 So.2d at 1285.
¶ 18. Jones also testified that his memory of the events giving rise to the present case had faded and that this impaired his ability to assist in his defense. The trial transcript tells a different story. Jones testified on his own behalf at trial. He demonstrated perfect recall of the events leading to his arrest. Further, Jones did not communicate any specific factor which impaired his ability to prepare for the defense of his case. He did not argue that the delay caused him to lose contact with witnesses who could testify in his behalf. "Although the delay in this case is presumptively prejudicial, we will not infer prejudice to the defense out of the `clear blue.'" Id. Finding no prejudice, this Court weighs this factor in the State's favor.

E. Balancing
¶ 19. A balancing of all the Barker factors reveals that Jones was not prejudiced by the delay in bringing his case to trial. Jones was imprisoned for a period of time before trial, but most, if not all, of his period of imprisonment stemmed from his parole revocation and conviction on subsequent criminal charges. While the State bore the burden of providing Jones with a speedy trial, Jones did not assert the right until nine months after his arrest. "Where, as here, the delay is neither intentional nor egregiously protracted, and where there is a complete absence of actual prejudice, the balance is struck in favor of rejecting [Jones's] speedy trial claim." Perry v. State, 637 So.2d 871, 876 (Miss. 1994). Under the totality of the Barker factors, this Court finds the State observed Jones's right to a speedy trial.

II. DID THE TRIAL COURT ERR IN DENYING JONES'S MOTION FOR DIRECTED VERDICT?
*859 ¶ 20. At the close of the State's evidence, Jones moved for a directed verdict. The trial court denied Jones's motion, and the trial resumed. A motion for a directed verdict challenges the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). This Court reviews the ruling on the last occasion the sufficiency challenge is made to the trial court. Wetz v. State, 503 So.2d 803, 807 n. 3 (Miss.1987). In the case at bar, the defendant last challenged the sufficiency of the evidence in his motion for judgment notwithstanding the verdict. This Court will, therefore, review the evidence in its state at the time the trial court overruled Jones's motion for JNOV.
¶ 21. The indictment charged Jones with "wilfully, unlawfully and feloniously, purposely, knowingly or recklessly caus[ing] bodily injury to Steve Atkinson by hitting Steve Atkinson with his fists, in direct violation of Section 97-3-7(1)(a), Mississippi Code 1972 Annotated, as amended...." Jones argues that the State did not introduce medical evidence to corroborate Atkinson's claim of bodily injury. Further, he argues that Atkinson did not miss any work due to his alleged injuries. Jones argues, therefore, that the evidence is not sufficient to support a conviction for the crime charged in the indictment.
¶ 22. In determining whether the evidence was legally sufficient to support the crime charged in the indictment, this Court must view the evidence in the light most favorable to the State, and the benefit of all favorable inferences that may be reasonably drawn from the evidence must be given to the State. McClain, 625 So.2d at 778; Wetz, 503 So.2d at 808. This Court must accept as true the credible evidence consistent with Jones's guilt. McClain, 625 So.2d at 778. We may reverse "only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." Id.
¶ 23. The inquiry in the present case is whether the jury could have only found Jones not guilty of inflicting bodily injury on Atkinson after viewing the evidence in the light most favorable to the State. A threshold question is: what constitutes bodily injury? In Murrell v. State, 655 So.2d 881, 884 (Miss.1995), the Mississippi Supreme Court noted that "a minor injury is a `bodily injury' even though it may not be a traumatic injury." (citing Reining v. State, 606 So.2d 1098, 1103 (Miss.1992)). The Murrell court did not require medical evidence of bodily injury to support a guilty verdict, but simply ruled testimony that the injured party experienced pain would suffice. Murrell, 655 So.2d at 884. The court held, however, that no evidence was introduced on the issue of bodily injury, not even testimony that the allegedly injured officer experienced pain due to the injury. The court noted: "[T]here are no Mississippi cases which address the issue of whether a jury can infer that one suffers pain where there is no medical treatment, no wound and no testimony concerning pain." Id. The Court declined to infer pain, holding that it is a simple task to ask the officer at trial whether he experienced pain.
¶ 24. In the present case, Officer Atkinson testified that he experienced pain due to Jones's hitting him in the back with his fists. Under Murrell, this testimony is legally sufficient to support the jury's verdict that Jones inflicted bodily injury upon Officer Atkinson. Further, Sgt. Sing testified that Atkinson's finger was bleeding so much that he insisted that Atkinson have it checked out by medical personnel. Taking this evidence in the light most favorable to the State, this Court finds the evidence legally sufficient to withstand a directed verdict.

III. DID THE TRIAL COURT ERR IN DENYING JONES'S PEREMPTORY INSTRUCTION AND GRANTING THE STATE'S S-1 INSTRUCTION?
*860 ¶ 25. Jones requested a peremptory instruction charging the jury that it must find him not guilty. This claim of error also challenges the legal sufficiency of the evidence, McClain, 625 So.2d at 778; therefore, it requires the same analysis as a motion for a directed verdict. Having held that the evidence was legally sufficient to withstand a directed verdict, this Court also holds that it was legally sufficient to defeat Jones's request for peremptory instruction.
¶ 26. Jones's complaint regarding S-1 is the same complaint regarding his directed verdict motion and his request for a peremptory instruction, that is, that S-1 is not supported by the evidence because the State did not prove the bodily injury claim. S-1 is the State's requested instruction on the elements of the crime of simple assault upon a law enforcement officer. S-1 accurately informed the jury that if it found Jones inflicted bodily injury upon Officer Atkinson, a man he knew to be an officer of the law, they must find Jones guilty of simple assault upon a law enforcement officer. Again, Officer Atkinson's testimony that he experienced pain and evidence that he received medical treatment for his injured finger was sufficient evidence of bodily injury. The trial court correctly instructed the jury regarding the elements of the crime for which Jones was indicted.

IV. WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 27. Jones claims the guilty verdict was against the overwhelming weight of the evidence. An overwhelming weight of the evidence argument is raised on a motion for new trial. McClain, 625 So.2d at 781. "New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. We reverse only for abuse of discretion, and on review we accept as true all evidence favorable to the State." Id.; Wetz, 503 So.2d at 807-08. The jury must review and weigh the conflicting evidence and witnesses' credibility and decide what evidence and whose testimony to believe. Id. In the present case, Jones's testimony conflicted with Officer Atkinson's and Sgt. Sing's testimony. The jury obviously chose to credit Atkinson's and Sing's testimony over Jones's. Accepting the evidence in the State's favor as true, this Court finds the verdict was not against the overwhelming weight of the evidence, and to allow it to stand will not sanction an unconscionable injustice. Id. at 782.

CONCLUSION
¶ 28. Jones was not prejudiced by the 322 day delay between his arrest and trial, especially since most, if not all, of his pretrial incarceration was caused by his parole revocation and conviction on unrelated charges. Further, Jones failed to assert his right to a speedy trial in a timely manner. Since there was no prejudice, and since the delay was not egregiously protracted, we find that Jones received his constitutional right to a speedy trial. Further, Officer Atkinson's testimony that he experienced back pain due to punches delivered by Jones was legally sufficient to constitute bodily injury; thus, the trial court correctly denied his motion for a directed verdict, his motion for peremptory instruction, and his objection to jury instruction S-1. Finally, weighing conflicting evidence and testimony is within the jury's purview. We find, therefore, that the guilty verdict was not against the overwhelming weight of the evidence, and no unconscionable injustice resulted therefrom. Accordingly, we affirm the judgment of the trial court.
¶ 29. THE JUDGMENT OF DESOTO COUNTY OF CONVICTION OF SIMPLE ASSAULT ON A LAW ENFORCEMENT OFFICER AND SENTENCE OF FIVE YEARS TO RUN CONSECUTIVELY *861 TO ANY SENTENCE DEFENDANT IS CURRENTLY SERVING AND ANY OTHERS PREVIOUSLY IMPOSED, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
NOTES
[1] Jones did not assert the statutory right to a speedy trial provided in Miss.Code Ann. § 99-17-1 (Rev.1994).