969 So.2d 72 (2007)
Jerome WHITE a/k/a Tyrone White, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01737-COA.
Court of Appeals of Mississippi.
April 17, 2007.
Rehearing Denied August 7, 2007.
*75 Donald W. Boykin, Jackson, attorney for appellant.
Office of the Attorney General by Deshun Terrell Martin, Eleanor Johnson Peterson, attorney for appellee.
Before LEE, P.J., GRIFFIS and ROBERTS, JJ.
LEE, P.J., for the Court.

FACTS
¶ 1. On May 18, 2003, Wallace Jackson, who was eighteen years old, left his sister's apartment in Jackson and was walking down the sidewalk to his car when two men approached him. One of the men placed what felt like a gun to Jackson's head and told him that if he screamed or told anyone he would be killed. This man went through Jackson's pockets but only found a pen and keys to Jackson's mother's car. While this was happening, Jackson recognized the other man as Jerome White and said, "Why are y'all doing this, Jerome?" Jackson testified that he recognized White because he and White went to the same school in the eighth grade. The other man, later identified as Jeremy Hayes, then asked Jackson if he had any money. Jackson took out his wallet, but before he could hand it to Hayes, White said, "Don't I know you?" Jackson responded that they had gone to school together. White then told Hayes, "Don't F with this man. I went to school with him at Northwest." White pushed the wallet back to Jackson, which according to White never left Jackson's hand, and told Hayes to give Jackson back the keys. Jackson testified that before White and Hayes ran off, White said to him, "I hope I hadn't offended you. Don't tell anybody." The Jackson Police Department was then contacted and later arrested White.

PROCEDURAL HISTORY
¶ 2. White was indicted on August 12, 2003 in Hinds County Circuit Court, First Judicial District. On October 15, 2004, White filed a motion to dismiss the indictment for failure to provide a speedy trial. White filed a second motion to dismiss the indictment for failure to provide a speedy trial on February 9, 2005. At trial on February 14, 2005, White was found guilty of armed robbery by a jury in the Hinds County Circuit Court. He was sentenced to twenty-five years, fifteen years of that time suspended, and five years probation. On March 25, 2005, White filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial which was denied on July 28, 2005.
¶ 3. White now appeals to this Court citing the following issues: (1) the trial court should have granted his juror challenges for cause; (2) the trial court erred in failing to grant his motions to dismiss the indictment for failure to provide a speedy trial and for violation of Mississippi Code Annotated Section 99-17-1; (3) the *76 verdict of the jury was unsupported by and contrary to the evidence, and the court should have granted his peremptory instructions and motions for directed verdict; (4) jury instruction D-12 on abandonment should have been granted; (5) the trial court erred in refusing to allow the police detective to testify concerning White's intent to steal a car; and (6) the trial court should have granted jury instruction D-15 on the lesser-included offenses of robbery or assault.
¶ 4. Finding no error, we affirm.

DISCUSSION
I. SHOULD THE TRIAL COURT HAVE GRANTED WHITE'S JUROR CHALLENGES FOR CAUSE?
¶ 5. The first question asked of the venire by White's counsel during voir dire was, "When you walked through that door today and sat in here for the first time, how many of you looked at Jerome White and said to yourself, I wonder what he did?" Fourteen members of the venire raised their hands. White now appeals the trial court's denial of his challenges for cause of three jurors who responded in the affirmative: Jurors Webb, Horton, and Rogers. White argues that these jurors should have been struck for cause because they had formed an opinion of White's guilt when they walked in the room and, therefore, could not be fair and impartial during trial. White also appeals the denial of his for cause challenge of Juror Ingram[1] who stated she was a victim of an armed robbery. White struck these four jurors using his peremptory challenges.
¶ 6. Jurors Webb, Horton, and Rogers basically stated that they thought White might have done something wrong because he was in court and sitting next to an attorney. No further questions were asked of their ability to base the verdict solely upon the evidence. The law in Mississippi on opinions of jurors is as follows:
Any person, otherwise competent, who will make oath that he is impartial in the case, shall be competent as a juror in any criminal case, notwithstanding the fact that he has an impression or an opinion as to the guilt or innocence of the accused, if it appear to the satisfaction of the court that he has no bias or feeling or prejudice in the case, and no desire to reach any result in it, except that to which the evidence may conduct.
Miss.Code Ann. § 13-5-79 (Rev.2002); see also Simmons v. State, 241 Miss. 481, 489, 130 So.2d 860, 863 (1961) (that a juror has formed an impression about the case does not disqualify him where he states that his opinion is not fixed and that he will decide the case on the evidence). We find that the trial court did not abuse its discretion in denying White's challenges for cause for these three jurors. Each took an oath that they were able to remain impartial. The fact that some of the jurors "wondered" why White was in the room is not dispositive that they could not be impartial.
¶ 7. Upon questioning regarding her ability to remain impartial, Juror Ingram responded that she felt she should not sit as a juror because she had been a victim of an armed robbery ten months ago and her assailant was never caught. In response to individual questioning by the trial court, she explained her feelings further:

*77 I think just the sympathizing with the victim of it, and knowing how unpleasant it really is. I think that would be quite a hindrance to me being unbiased. Just the sympathizing with it, and knowing how much I would like to see the person who did it to me put on trial.
The judge then asked her if she could still be impartial and base her verdict solely on the evidence despite these feelings. She responded, "I could probably set it aside. I think my best answer would be that I would try my hardest to do that. . . . I would set it aside if I was asked to be a juror, and I can assure the Court that I would do that."
¶ 8. Excusing jurors for cause is in the complete discretion of the trial court. Berry v. State, 703 So.2d 269, 292 (Miss.1997); Pierre v. State, 607 So.2d 43, 49 (Miss.1992). A trial court is entitled to deference when its for cause strikes are reviewed because of its ability to evaluate the demeanor of potential jurors, and reversal is not warranted where its findings are fairly supported by the record. Berry, 703 So.2d at 293. If the trial court determines that a juror is unable to fairly try the case, the judge is required strike that juror for cause. Parker v. State, 825 So.2d 59, 64(¶ 18) (Miss.Ct.App.2002).
¶ 9. White urges this Court to find that the trial judge abused his discretion based on our decision in Magee v. State, 912 So.2d 1044 (Miss.Ct.App.2005). In Magee, the venire person's son was prosecuted for possession of a controlled substance in the same county as Magee's trial and was still under house arrest. Id. at 1052(¶ 42). She felt that her son's prosecution would impact her decision and that she could not be fair. Id. She stated that she would lean against the State because of "the way they did it." Id. She also stated that the prosecutor looked familiar but was not sure she recognized her. Id. She later stated that she could put this aside and judge the case fairly. Id. In granting the challenge for cause, the court stated that "her opinions were so strong and of such a nature originally that the Court is of the opinion that she has a bias which is so strong would [sic] not make her fair to sit." Id. at 1053(¶ 43). On appeal, the Court upheld the trial judge's decision to grant the challenge for cause. Id.
¶ 10. Just because similarities exist between the venire person in Magee and the case sub judice does not mean that the trial judge in this case abused his discretion by not ruling the same way. For example, in Avera v. State, 761 So.2d 900, 906(¶ 19) (Miss.Ct.App.2000), a similar situation arose, and, in discussing the merits, even though the issue was procedurally barred, we stated that it was not error for the trial court to deny the defendant's challenge for cause.
¶ 11. In the case sub judice, one juror was voir dired individually on her ability to be impartial, two stated that their opinions of White were not fixed one way or the other, and the fourth was not questioned further on the matter. We find that the trial court did not abuse its discretion in refusing to grant White's challenges for cause.
¶ 12. We find that this issue is without merit.
II. DID THE TRIAL COURT ERR IN DENYING WHITE'S MOTION TO DISMISS FOR FAILURE TO PROVIDE A SPEEDY TRIAL?
¶ 13. White argues that his constitutional right to a speedy trial was violated under the factors set out by the Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). White also argues that his statutory right to a speedy trial was violated because more than 270 days passed before he was *78 brought to trial in violation of Mississippi Code Annotated Section 99-17-1 (Rev. 2000). The pertinent dates we will use in our analysis are as follows:
Arrest  May 27, 2003
Indictment filed  August 12, 2003
Arraignment  November 3, 2003
Initial trial setting  April 6, 2004 (continued due to State conflict)
Initial trial  October 18, 2004 (resulted in mistrial due to prosecution error)
Second trial  February 8, 2005 (delayed due to emergency of defense counsel)
Second trial  February 14, 2005
1. Barker v. Wingo Factors
¶ 14. Since there is no set amount of time within which a defendant must be brought to trial, the United States Supreme Court has developed a balancing test to determine whether a defendant's constitutional rights to a speedy trial have been violated. See Barker, 407 U.S. at 530, 92 S.Ct. 2182. The four factors to be considered together and balanced are (1) length of delay, (2) reason for delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. Id. at 530-32, 92 S.Ct. 2182; Stark v. State, 911 So.2d 447, 450(¶ 7) (Miss.2005)
A. Length of Delay
¶ 15. Under Barker, "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530, 92 S.Ct. 2182. In Mississippi, any delay from the date of arrest, indictment, or information until trial exceeding eight months is presumptively prejudicial. Stark, 911 So.2d at 449-50(¶ 7); Smith v. State, 550 So.2d 406, 408 (Miss.1989). White was arrested on May 27, 2003, and his trial finally occurred on February 14, 2005. This was a delay of approximately 22½ months. Since this exceeds eight months, it is presumptively prejudicial and the cause of the delay must be analyzed under the remaining Barker factors.
B. Reason for Delay
¶ 16. "Once a delay is found to be presumptively prejudicial, the burden of proof shifts to the State to show cause for the delay." Stark, 911 So.2d at 450(¶ 11). The appellate court must determine whether the delay should be charged to the State or the defendant. Id. Since the burden is on the State to provide a defendant with a speedy trial, this factor is weighed against the State unless it can show either that the delay was caused by the defendant or that the delay was for a good cause. Id.; Wiley v. State, 582 So.2d 1008, 1012 (Miss.1991).
¶ 17. A total of 629 days passed between White's arrest to his trial. The State filed for a continuance of the April 6 original trial setting because it had an older case scheduled for trial on that same day. The trial judge granted the continuance, and White's trial was continued until October 18, 2004. White argues that this delay should be counted against the State since "a crowded docket alone will not establish good cause." Jones v. State, 756 So.2d 852, 857(¶ 14) (Miss.Ct.App.2000). We disagree with this argument because the State did not simply cite a "crowded docket" as the reason for the continuance. The State specifically stated that it had another trial scheduled for April 6. Even so, Jones goes on to state that "`[d]elays caused by overcrowded dockets are not to be weighed heavily against the State.'" Id. (quoting State v. Magnusen, 646 So.2d 1275, 1282 (Miss.1994)). "Several occurrences may justify a delay in a criminal *79 case, one of these being `well-taken' motions for continuance." Flora v. State, 925 So.2d 797, 815(¶ 63) (Miss.2006). We find the State's motion for continuance due to the conflict well taken and do not count this delay of 195 days against the State. However, the delay from October 18, 2004 to February 8, 2005 was the result of a motion made by the State and not agreed to by White. Therefore, this time period, 113 days, is attributed to the State. The time from February 8 to February 14 was requested by the defense and, therefore, will not count against the State.
¶ 18. Using the above analysis, 201 days are attributed to White-195 for good cause and six for the delay by White's counsel. Subtracting these days from the 629 days from arrest to trial, the State is charged with 428 days of delay. This fourteen month delay exceeds the eight month threshold for presumptive prejudice.
¶ 19. This factor weighs in favor of White.
C. Assertion of Right to Speedy Trial
¶ 20. White never requested nor moved for a speedy trial. While it is the State's burden to bring an accused to trial, a defendant's failure to assert his right to a speedy trial must be weighed against him. Stark, 911 So.2d at 452(¶ 26). Although White filed two motions to dismiss the indictment for failure to provide a speedy trial, this is not equivalent to requesting a speedy trial. Id. White asks this Court to consider his age, education, incarceration status, and legal representation in considering his failure to request a speedy trial. These issues will be discussed under the fourth factor  prejudice to the defendant.
¶ 21. This factor weighs in favor of the State.
D. Prejudice to the Defendant
¶ 22. White argues that he was prejudiced because at the time of his trial he was nineteen-years-old, had a ninth grade education, and was continuously incarcerated. According to White, he only saw his daughter once during his incarceration, and typically he visited with her twice a week before his incarceration. He argues that he was prejudiced because he was unable to work to earn money for his family during his incarceration, and for approximately three weeks he was on lock down for twenty-three hours a day. "`Generally, proof of prejudice entails the loss of evidence, death of witnesses, or staleness of an investigation.'" Wesley v. State, 872 So.2d 763, 768(¶ 25) (Miss.Ct. App.2004) (quoting Sharp v. State, 786 So.2d 372, 381(¶ 19) (Miss.2001)). White argues that he was denied the right to a speedy trial on the count of armed robbery because he was prejudiced. However, we note that White had four indictments pending against him at the time of trial and went through several court-appointed attorneys through his own requests. Regardless, the alleged instances of suffering during White's incarceration are not the type of proof required to show that his trial was prejudiced. White makes no assertion that the delay prejudiced his trial.
¶ 23. This factor does not weigh in White's favor.
¶ 24. After viewing together and evaluating all the Barker factors, we conclude that White's constitutional rights to a speedy trial were not violated.
2. 270 day analysis
¶ 25. Mississippi Code Annotated Section 99-17-1 states: "Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred *80 seventy (270) days after the accused has been arraigned." When the accused is not brought to trial within 270 days, absent good cause, the defendant is entitled to dismissal. Dies v. State, 926 So.2d 910, 914(¶ 7) (Miss.2006). We use a two-step test for 270-day rule analysis. The first step is to determine the total number of days between arraignment and trial. Id. at 914(¶ 8). The date of arraignment is not counted, but the date of trial and weekends are counted unless the 270th day falls on a Sunday. Adams v. State, 583 So.2d 165, 167 (Miss.1991). The second step is to consider each delay separately, because only those delays attributable to the State count toward the 270 days. Manix v. State, 895 So.2d 167, 174(¶ 9) (Miss.2005).
¶ 26. The number of days between White's arraignment and actual trial was 469. The delays attributable to the State, as discuss above, are (1) the 155 days between the arraignment and the initial trial date and (2) the 113 days between the initial trial date and the second trial date. Together, this is 268 days counted against the State. Therefore, the 201 remaining days of the 469 total number of days are attributable to good cause or to White. Since less than 270 days are counted against the State, White was tried within the statutory limits.
¶ 27. We find this issue without merit.
III. DID THE TRIAL COURT ERR IN NOT GRANTING WHITE'S PEREMPTORY INSTRUCTIONS AND MOTIONS FOR DIRECTED VERDICT?
¶ 28. "The standard of review for a denial of a directed verdict, peremptory instruction, and a JNOV are identical." Conerly v. State, 879 So.2d 1101, 1109-10(¶ 34) (Miss.Ct.App.2004). Each challenges the legal sufficiency of the evidence. Id. "On the issue of legal sufficiency, reversal can only occur when evidence of one or more of the elements of the charged offense is such that `reasonable and fair-minded jurors could only find the accused not guilty.'" Id. (citing Hawthorne v. State, 835 So.2d 14, 21(¶ 31) (Miss.2003)).
¶ 29. White argues that it is unclear of what crime the jury found him guilty since the indictment charged him with "armed robbery or attempted armed robbery" and the jury returned a verdict simply finding White "guilty as charged." We find this argument without merit. Mississippi Code Annotated Section 97-3-79 (Rev.2006) punishes attempted armed robbery the same as armed robbery; therefore, the crime of armed robbery is complete at the attempt. Calhoun v. State, 881 So.2d 308, 311(¶ 12) (Miss.Ct. App.2004). Section 97-3-79 states:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery. . . .
(emphasis added). Since Section 97-3-79 makes both an attempt to take and an actual taking armed robbery, the jury verdict was not unclear as this section treats both crimes equally. Notwithstanding, jury instruction S-1 clearly states that the crime for which the State was asking that White be found guilty was "armed robbery."
¶ 30. White next argues that whether he was found guilty of armed robbery or attempted armed robbery, the facts show that he abandoned the crime and thus the trial court abused its discretion in not granting his motion for JNOV. "[A]bandonment occurs where, through the verbal urging of the victim, but with no *81 physical resistance or external intervention, the perpetrator changes his mind." Kizart v. State, 795 So.2d 582, 584(¶ 7) (Miss.Ct.App.2001). A perpetrator cannot claim that he abandoned his attempt when, in fact, he ceased his efforts because the victim or a third party intervened or prevented him from furthering the attempt. Id.
¶ 31. White relies on Pruitt v. State, 528 So.2d 828 (Miss.1988), in arguing that he abandoned the crime of armed robbery. Pruitt's conviction of attempted rape was overturned on the theory of abandonment. However, Pruitt is distinguishable from the case sub judice because Pruitt, although he threatened the potential victim, voluntarily ceased his actions before proceeding with any element of attempted rape. Id.; see Miss.Code Ann. Section 97-1-7 (Rev.2006) (Attempt requires an overt act toward the commission of the offense). The court found that Pruitt could have appropriately been charged with simple assault or another crime but not attempted rape. Pruitt, 528 So.2d at 831. Here, White and his accomplice had consummated the act of armed robbery before they decided to return Jackson's property to him. While White or his accomplice may not have taken possession of the wallet, White's accomplice had taken Jackson's mother's keys from Jackson and had them in his hand before White realized he knew Jackson. We refuse to hold that abandonment can occur after a crime has taken place.
¶ 32. This issue is without merit.
IV. DID THE TRIAL COURT ERR IN REFUSING TO GRANT JURY INSTRUCTION D-12 ON THE ISSUE OF ABANDONMENT?
¶ 33. In reviewing the denial of a jury instruction, this Court considers not only the denied instruction but also all of the instructions which were given to ascertain if error lies in the refusal to give the requested instruction. Coleman v. State, 697 So.2d 777, 782 (Miss.1997). "A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in another instruction, or is without foundation in the evidence." Heidel v. State, 587 So.2d 835, 842 (Miss. 1991).
¶ 34. Jury instruction D-12 presented White's defense of abandonment. White points us to Hester v. State, 602 So.2d 869, 872 (Miss.1992) (citations omitted), wherein this Court held:
In a homicide case, as in other criminal cases, the court should instruct the jury as to theories and grounds of defense, justification, or excuse supported by the evidence, and a failure to do so is error requiring reversal of a judgment of conviction. Even though based on meager evidence and highly unlikely, a defendant is entitled to have every legal defense he asserts to be submitted as a factual issue for determination by the jury under proper instruction of the court. Where a defendant's proffered instruction has an evidentiary basis, properly states the law, and is the only instruction presenting his theory of the case, refusal to grant it constitutes reversible error.
Using the factors from Hester, we must consider the following issues in deciding whether the trial court committed reversible error in denying White's abandonment instruction: (1) did the proffered instruction have an evidentiary basis, (2) did it properly state the law, and (3) was it his only instruction which presented his theory of the case? Id. Since prong one is not satisfied, we will not discuss the other two prongs. No evidentiary basis existed to *82 find that White abandoned the crime of armed robbery prior to the consummation of the offense as discussed in Issue III, supra. The evidence shows that White consummated the act of armed robbery before returning Jackson's property to him.
¶ 35. Since no evidentiary basis existed for an abandonment instruction, we cannot find that the trial court erred in refusing to grant White's jury instruction D-12. This issue is without merit.
V. DID THE TRIAL COURT ERR IN REFUSING TO ALLOW THE POLICE DETECTIVE TO TESTIFY CONCERNING THE DEFENDANT'S ATTEMPT TO STEAL A CAR?
¶ 36. White's accomplice took Jackson's mother's car keys out of Jackson's pocket and held them in his hand until White insisted that he give them back to Jackson. The trial court excluded certain testimony of Detective Sharesa Sparkman regarding White's intent to steal a car based on hearsay objections. The standard of review regarding the admission or exclusion of evidence is abuse of discretion. Yoste v. Wal-Mart Stores, Inc., 822 So.2d 935, 936(¶ 7) (Miss.2002). Any error in the admission or exclusion of evidence is not grounds for reversal unless the error adversely affected a substantial right of a party. Lynch v. State, 877 So.2d 1254, 1281(¶ 86) (Miss.2004).
¶ 37. White argues that his defense was prejudiced without testimony from Detective Sparkman because the jury was instructed to find him guilty of armed robbery if he committed armed robbery against Jackson by taking or attempting to take Jackson's wallet containing lawful currency and credit cards "or any other property" from Jackson. (emphasis added). White asserts that "any other property" could have included the car keys which may have given the jury the impression that White's intention was to steal a car. White argues that the evidence showed that he wanted cash and not to steal a car.
¶ 38. We cannot find that the trial court abused its discretion in sustaining the hearsay objection as to whether anyone stated that White or Hayes were attempting to steal a car. White argues that this testimony would have constituted a hearsay exception as to the declarant's intent, plan, or motive to do something in the future. M.R.E. 803(3). We find that the exclusion of this testimony is not grounds for reversal because it does not affect any of White's substantial rights. Lynch, 877 So.2d at 1281(¶ 86). White's argument misses the point of the armed robbery statute. The statute states that armed robbery occurs when a person "take[s] or attempt[s] to take from the person or from the presence the personal property of another. . . ." Miss.Code Ann. § 97-3-79. Therefore, according to the statute, "the crime of armed robbery is complete at the attempt." Calhoun, 881 So.2d at 311(¶ 12). When a perpetrator attempts to rob a victim, the perpetrator may not know what valuables, if any, the victim has with him. Armed robbery is not defeated when the perpetrator finds out that the victim has nothing of value to take. White's defense was not prejudiced nor did the trial court abuse its discretion by not allowing this testimony as it was not necessary to White's defense.
¶ 39. We find this issue without merit.
VI. DID THE TRIAL COURT ERR IN REFUSING TO GRANT JURY INSTRUCTION D-15 WHICH PROVIDED FOR A LESSER-INCLUDED OFFENSE?
¶ 40. White argues that the trial court erred in refusing to grant jury instruction D-15 which provided for the *83 lesser-included offenses of robbery and assault. A jury instruction on a lesser-included offense is to be given only when a defendant "points to evidence in the record from which a jury could reasonably find him not guilty of the crime with which he was charged and at the same time find him guilty of the lesser-included offense." Ladnier v. State, 878 So.2d 926, 932(¶ 21) (Miss.2004). White has pointed to no evidence by which a jury could find him not guilty of armed robbery and yet guilty of robbery or assault. The only argument that White makes is that since he abandoned the crime of armed robbery he can only be found guilty of a lesser offense. Having found that White did not abandon the crime of armed robbery until after its consummation, we cannot find that a lesser-included offense instruction was warranted.
¶ 41. We find this issue without merit.
¶ 42. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIFTEEN YEARS SUSPENDED AND FIVE YEARS OF SUPERVISED PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] White states in his appellate brief that Juror Ingram also answered in the affirmative to the question if upon seeing White she said to herself, "I wonder what he did?" The record reflects no answer by her to this question; thus, we must assume the challenge is only based on her statements that she was the victim of an armed robbery.