ROBERTS, J.,
for the Court:
¶ 1. On February 14, 2008, Carlos Var-nado was indicted on one count of conspiracy to commit armed robbery, nine counts of armed robbery, and one count of capital murder.[1] The State later nol prossed three counts of armed robbery and the murder count. At his January 2010 trial in the Marion County Circuit Court for the count of conspiracy to commit armed robbery and the six counts of armed robbery, a jury unanimously found Varnado guilty of all seven counts. Varnado was sentenced to five years in the custody of the Mississippi Department of Corrections (MDOC) for the conspiracy count to run concurrently with his sentences for the armed-robbery counts. He was sentenced to twenty years in the custody of the MDOC for each armed-robbery count. Counts two and three were ordered to run consecutively to each other. The remaining counts were ordered to run concurrently to each other. Therefore, Varnado was ultimately sentenced to serve forty years in the custody of the MDOC. Varnado filed a motion for reconsideration and a motion for a new trial which the circuit judge denied. Feeling aggrieved, Varnado appeals.
FACTS AND PROCEDURAL HISTORY
¶ 2. On March 18, 2007, a group of men were gathered in a building adjacent to the home of Leon Andrews in Columbia, Mississippi. The building was typically used, as it was that night, to play pool, watch ball games, and “shoot dice.” Later that night, two armed men with stockings covering their faces burst through the build *837 ing’s door and ordered everyone to get on the floor. At gunpoint, the two men demanded marijuana, money, and cell phones. After collecting the items, the two men forced the others to take off their clothes. During the course of the robbery and while exiting the building, the two men fired multiple shots into the building; one bullet ultimately killed Lorenzo Flowers.[2]
¶ 3. When the police arrived at the scene, the robbery victims identified the two men as Joshua Moore and Varnado. Police arrested both men and recovered weapons, clothing, and a cell phone. A Marion County grand jury indicted both men and a third man, Christopher Thompson, on one count of conspiracy to commit armed robbery, nine counts of armed robbery, and one count of capital murder. In the case against Varnado, the State nol prossed three counts of armed robbery and the murder count. On January 25, 2010, Varnado was tried alone in front of a jury on one count of conspiracy to commit armed robbery and six counts of armed robbery. After hearing the testimony and evidence presented, the jury unanimously returned guilty verdicts for all counts. He received a five-year sentence for Count I: conspiracy to commit armed robbery. Varnado then received twenty-year sentences for armed robbery on Counts II through VII. Counts I, IV, V, VI, and VII were ordered to run concurrently with the sentences imposed in Counts II and III. Counts II and III were ordered to run consecutively to each other. He would ultimately serve a total of forty years in the custody of the MDOC. Varnado was also ordered to pay fines, fees, and restitution.
¶ 4. Varnado filed a motion for reconsideration and a motion for a new trial. The circuit judge denied both motions. It is from these denials that Varnado appeals. He raises three issues which we recite verbatim:
I. The evidence was insufficient to support a conviction of armed robbery [of] Earnest Ratlifff.]
II. The trial court erred by allowing hearsay testimony.
III. The trial court erred by not suppressing any and all statements made by Varnado due to his inability to knowingly and voluntarily waive his Miranda rights.
¶ 5. Finding no error, we affirm the circuit court’s judgment.
ANALYSIS
I. SUFFICIENCY OF THE EVIDENCE
¶ 6. Varnado first argues that there were insufficient evidence to support the conviction of armed robbery of the victim Earnest Ratliff. The standard of review for challenges to the sufficiency of the evidence is well settled in Mississippi. Viewing the evidence, in the light most favorable to the State, “the critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]’ ” Brown v. State, 48 So.3d 614, 616 (¶ 6) (Miss.Ct.App.2010) (quoting Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citation omitted)). Further, if “any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction.” Id. “If we find that reasonable, fair- *838 minded jurors could have concluded that the defendant was guilty of the accused crime, the evidence will be deemed sufficient.” Id.
¶ 7. In his brief, Varnado notes that he moved for a directed verdict at trial and made post-trial motions to reconsider and for a new trial; all were denied. However, Varnado fails to note that he did not raise this particular issue in the motion for a directed verdict, motion to reconsider, or motion for a new trial. From our reading of the record, we determine the circuit court never had an opportunity to hear this particular issue. The failure to raise an issue at the trial level is a procedural bar to the issue on appeal. Birrages v. Ill. Cent. R.R. Co., 950 So.2d 188, 194 (¶ 18) (Miss.Ct.App.2006) (citing Bell v. State, 769 So.2d 247, 251 (¶ 8) (Miss.Ct.App.2000)). Procedural bar notwithstanding, we will address the merits of this issue.
¶ 8. Mississippi’s armed-robbery statute is found in Mississippi Code Annotated section 97-3-79 (Rev.2007) and states the following:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery....
Varnado argues that the evidence does not show that all the elements of armed robbery were met in regard to Ratliff. In particular, he claims that the carrying away of the property of another was not proved at trial. Ratliff testified that no money was taken from him because he had lost all of his money in the dice game. Since no money was taken from Ratliff, Varnado argues that his conviction on that count should not stand and that this Court should reverse and render the case. We disagree.
¶ 9. Varnado is not the first person convicted of armed robbery to make this argument before this Court. It is well-settled case law in the state of Mississippi that a “conviction based on armed robbery does not require that there be an actual taking.” Croft v. State, 992 So.2d 1151, 1159 (¶ 33) (Miss.2008); see also Cooper v. State, 386 So.2d 1115, 1116 (Miss.1980); White v. State, 969 So.2d 72, 82 (¶ 38) (Miss.Ct.App.2007); Houston v. State, 811 So.2d 371, 372 (¶¶ 4-5) (Miss.Ct.App.2001). This Court has held that the armed-robbery statute includes the crime of attempted armed robbery and that “the crime of armed robbery is complete at the attempt.” White, 969 So.2d at 82 (¶ 38). Further, “[w]hen a perpetrator attempts to rob a victim, the perpetrator may not know what valuables, if any, the victim has with him. Armed robbery is not defeated when the perpetrator finds out that the victim has nothing of value to take.” Id. In this case, Varnado is still guilty of armed robbery even though Ratliff had nothing of value to take. Varnado attempted to take property from Ratliff and would have succeeded had Ratliff not lost all of his money in the dice game.
¶ 10. Keeping in mind our standard of review, we find that there was sufficient evidence to support an armed-robbery conviction. Thus, we find this issue without merit.
II. HEARSAY
¶ 11. Varnado’s second argument is that the trial court erred by allowing hearsay testimony during trial. The standard of review that this Court applies when reviewing the admission or exclusion of evidence is abuse of discretion. Walls v. State, 928 So.2d 922, 927 (¶ 12) (Miss.Ct.App.2006) (citing Harrison v. McMillan, *839 828 So.2d 756, 765 (¶ 27) (Miss.2002)). At issue is Officer Roy Clingon’s testimony that he was told by Officer Doug Barnes that Vivian Alexander had received a phone call informing her that Varnado had shot someone. Varnado asserts that this testimony unfairly bolstered Officer Clin-gon’s testimony and that his right to cross-examination was diluted.
¶ 12. This issue was addressed previously by the circuit court. Varnado filed a motion in limine to prohibit several pieces of evidence, including:
Any out of court statements made to any witness, including but not limited to the following: statements (whether oral or written) made by witnesses to any law enforcement personnel, statements made by one law enforcement officer to any other law enforcement officer, and anything that Vivian Alexander may have heard from Colby Stanley as to what Varnado allegedly told him; as same constitutes inadmissible hearsay[.]
At trial, the circuit judge heard Varnado’s argument on the motion in limine and found that he would not preclude the statements as long as they fit within an exception of the hearsay rule. During the State’s direct examination of Officer Clin-gon, Varnado again objected to the testimony as it was “triple hearsay” not within any of the exceptions or that, pursuant to Mississippi Rule of Evidence 408, the prejudicial effect outweighs the probative value. The State’s response was that the statement was not hearsay because it was not being offered to prove the truth of the matter asserted. It was only being offered to show why and how the police had developed Varnado as a suspect. The circuit judge overruled Varnado’s objection on the ground that the statement was introduced to show the investigation process and not to prove Varnado’s guilt or innocence. The following testimony was given in front of the jury:
STATE: But prior to that time, how did you and/or Officer Barnes develop Mr. Varnado as a suspect?
[[Image here]]
OFFICER CLINGON: [Officer] Doug Barnes received information from Vivian Alexander that she had received a phone call that — that [sic] Carlos Varnado had called and stated that he had shot someone.
Varnado asserts that this statement “is not the kind of investigatory exception to hearsay which has been carved out to explain an investigating offieer[’]s action” found in Jackson v. State, 985 So.2d 1108, 1114 (¶¶ 8-9) (Miss.Ct.App.2006). We disagree and find that this statement Officer Clin-gon made at trial is within that exception. In Jackson, 935 So.2d at 1114 (¶ 8), the circuit court allowed the officer to testify that the reason he went to Jackson’s home was based on statements from two people that the stolen property was at Jackson’s home. This Court found that none of the statements “were offered to prove the truth of the matter asserted, which was whether the stolen items were in Jackson’s possession.” Id. at (¶ 9). The statements were to show why the officer was at Jackson’s home, not that the stolen property was in Jackson’s possession. Id. The facts of the current case are similar. In this case, it is clear from the record that the State offered the statements to show how Varnado’s name was brought to their attention as a possible suspect and not that Varnado had shot someone.
¶ 13. We hold that the statements offered were not used to show the truth of the matter asserted, and we find the circuit judge did not abuse his discretion by allowing such statements at trial. This issue is without merit.
*840 III. WAIVER OF MIRANDA RIGHTS
¶ 14. Varnado’s final argument is that he did not have the requisite mental capacity to make a knowing and voluntary waiver of his Miranda rights before he gave a confession to the police. Before addressing Varnado’s argument, it is important to note our standard of review is limited when determining whether a waiver of Miranda rights were voluntarily and knowingly given. Miller v. State, 740 So.2d 858, 866 (¶ 34) (Miss.1999). The Mississippi Supreme Court held that the determination of “[wjhether there has been an intelligent, knowing and voluntary waiver is essentially a factual inquiry to be determined by the trial judge from the totality of the circumstances.” Neal v. State, 451 So.2d 743, 753 (Miss.1984). Our review of.a trial court’s finding of fact is to determine if the trial judge applied the appropriate legal standard when evaluating the facts. Id. If we determine that the trial judge did apply the appropriate legal standard, we next determine if there was substantial evidence presented to support his/her finding. Id.
¶ 15. We agree with Varnado’s assertion in his brief that the mental abilities and intelligence level are factors to be considered when determining the volun-tariness of a confession. Id. at 755-56. However, we disagree with Varnado that the circuit judge erred in not suppressing Varnado’s confession; instead, we find that the circuit judge applied the appropriate legal standard and that there was sufficient evidence presented to support his finding.
¶ 16. On January 13, 2010, the circuit court held a hearing on Varnado’s motion to suppress his involuntary statements. At this hearing, Varnado offered the testimony of Dr. William Criss Lott to show that Varnado had been previously diagnosed with a form of mild retardation or borderline intellectual functioning. Dr. Lott testified that, in his opinion, Varnado “did not appear to have the sever adaptive deficits, or daily living skills deficits, that would render him mentally retarded according to the Diagnostic and Statistical Manual ... [,]” but his intellectual level “ranged from the extremely low level to the moderately retarded range to more recent scores in the borderline range[;] all are in the below-average or the sub[-]average level.” He further testified that with regard to waiving Miranda rights, he thought that Varnado understood that he was voluntarily agreeing to speak, but it was less certain, and difficult to determine with certainty, as to whether Varnado truly understood the long-term consequences of his statements. Also at the hearing, the testimony of Officer Barnes was offered by the State. Officer Barnes, along with two other officers, gave Varnado his Miranda rights and interviewed him the morning after the incident. Officer Barnes also testified that the Miranda waiver that Varnado had signed consisted of two parts. The first part inquired as to whether Var-nado understood the rights. The second part inquired whether Varnado, being mindful of the results of waiving his rights, waived these rights. Varnado answered in the affirmative to both questions and gave a verbal statement to the officers. Based on the evidence presented at this hearing, we find that there is sufficient evidence to support the circuit judge’s finding that the waiver was voluntarily and knowingly made.
¶ 17. This issue is without merit.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF MARION COUNTY OF CONVICTION OF COUNT I, CONSPIRACY TO COMMIT ARMED ROBBERY, AND SENTENCE OF FIVE YEARS, AND COUNTS II, III, IV, *841 V, VI, AND VII, ARMED ROBBERY, AND SENTENCE OF TWENTY YEARS FOR EACH COUNT, WITH THE SENTENCES IN COUNTS I, IV, V, VI, AND VII TO RUN CONCURRENTLY, AND WITH THE SENTENCES IN COUNTS II AND III TO RUN CONSECUTIVELY TO EACH OTHER AND CONCURRENTLY WITH THE SENTENCES FOR THE REMAINING COUNTS, FOR A TOTAL OF FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MARION COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR.

. Also listed in the indictment were the names of Joshua Moore and Christopher Thompson. Neither Moore nor Thompson are involved in this appeal.

. It was later determined at a separate trial that Moore was responsible for the death of Flowers. As a result of that decision, the State nol prossed the murder charge against Varnado.