879 So.2d 1101 (2004)
Eldawaneli Tarloytauruss CONERLY a/k/a Eldawain Conerly, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KP-01297-COA.
Court of Appeals of Mississippi.
August 3, 2004.
*1103 Eldawaneli T. Conerly, appellant, pro se.
Office of the Attorney General by Jean Smith Vaughan, attorneys for appellee.
EN BANC.
IRVING, J., for the Court.
¶ 1. Eldawaneli T. Conerly was found guilty by a Walthall County jury of two counts of simple assault on a law enforcement officer and one count of aggravated assault on a law enforcement officer. He was sentenced to ten years for the simple assault and twenty years for the aggravated assault, for a total of thirty years, all counts to run consecutively.
¶ 2. Aggrieved, Conerly now assigns the following issues as error: (1) the trial court committed reversible error by failing to order sua sponte a competency hearing before allowing him to represent himself, and trial counsel who served as his advisor was ineffective for failing to request such hearing; (2) the trial court erred in overruling his motion in limine to exclude testimony concerning an alleged armed robbery that preceded the chase, and a gun found in his car after the car was impounded; (3) the trial court erred in overruling his objection to the admission of a warrant and a photograph because the State failed to disclose these items during discovery; (4) the trial court committed reversible error by failing to instruct the jury on the elements of aggravated assault and refusing to grant limiting instructions; (5) the prosecution's continuous referral to an alleged prior armed robbery and its instructions to the jury in closing arguments to hold the armed robbery against him violated his right to a fair trial; (6) and the jury's verdict is against the overwhelming weight of evidence. Conerly also contends that the evidence is insufficient as a matter of law to sustain his conviction. Finding no reversible error, we affirm all issues.

FACTS
¶ 3. On June 15, 2001, police officers in Walthall County received a warning to be on the lookout (BOLO) for a man in a white Oldsmobile Cutlass that had been involved in an armed robbery in Washington Parish, Louisiana. Officers Truitt Simmons, Lee Cotton, and Kyle Huhn each heard the BOLO over their radios and began patrolling in different areas. Officer Huhn called in on his radio and stated that he had spotted the car at a McDonald's and that the suspect was inside eating. The officers decided to wait until the suspect left McDonald's before approaching him due to safety concerns for patrons inside the restaurant. When the suspect, who was later identified as Eldawaneli *1104 T. Conerly, came out of the restaurant, and got into his vehicle and began to drive away, Officer Huhn came up behind him and turned on his siren and blue lights. Conerly did not stop. Officer Huhn continued to follow him. Shortly thereafter, Officer Simmons arrived and joined in the chase. Officer Simmons pulled up beside Conerly's car and began to motion for Conerly to pull over. Conerly refused to pull over, and Officer Simmons fell back in behind Conerly. Officers from Pike County were notified that police were in hot pursuit of the suspect and that they were about to enter Pike County. Officer Cotton joined the pursuit at the Pike County line. As Conerly entered Pike County, Officers Cotton, Simmons, and Huhn decided to do a rolling road block[1] to slow Conerly down. Conerly, however, did not stop and drove his car into Officers Simmons's and Huhn's cars.[2] Conerly continued driving and the police officers continued to pursue him while trying to get him to pull over. The chase finally ended in a residential area, and Conerly jumped out of his vehicle and ran into a wooded area. He was not apprehended until almost a year later. Additional facts will be related during the discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Competency Hearing/Ineffective Assistance of Counsel
¶ 4. Conerly first alleges that the trial court failed to order a competency hearing before allowing him to represent himself, and as a result, his waiver of right to counsel was neither voluntary nor intelligent. He further alleges that his attorney was ineffective in failing to request such hearing.
¶ 5. The State submits that Conerly's ineffective assistance of counsel claim is without merit since he waived representation of counsel, and his attorney sat merely in an advisory capacity.
¶ 6. Conerly relies on Howard v. State, 701 So.2d 274 (Miss.1997) in support of his argument that he should have been given a competency hearing before being allowed to represent himself. In Howard, the Mississippi Supreme Court held that "[e]ven where the issue of competency to stand trial has not been raised by defense counsel, the trial judge has an ongoing responsibility to prevent the trial of an accused unable to assist in his own defense." Id. at 280. The defendant in Howard waived his right to counsel and represented himself. He was convicted and sentenced to death. Id. at 275-76. On appeal, the court reversed and remanded the case for a new trial, finding that the defendant was not competent to represent himself and that his waiver of right to counsel was not voluntary. The court noted that a trial judge has an obligation to order a competency hearing whenever a "reasonable question of the defendant's [mental] capacity arises." Id. at 281. The court also stated that the determination of what is reasonable rests largely within the discretion of the trial judge since he sees the evidence first hand, and observes the demeanor and behavior of the defendant. Id.
*1105 ¶ 7. The Howard court set forth a five-part test to determine if a defendant is competent to stand trial. The court held that before a defendant can be said to be capable of an intelligent and knowing waiver of [his] right to counsel, it must be shown that the defendant is able to satisfy the criteria for competency to stand trial, that is, be able to (1) perceive and understand the nature of the proceedings, (2) rationally communicate with his attorney about the case, (3) recall relevant facts, and (4) testify in his own defense if appropriate. Id. at 280. The defendant's ability to satisfy the foregoing criteria must be commensurate with the severity and complexity of the case. Id.
¶ 8. We find that Conerly's reliance on Howard is misplaced. Conerly, unlike the defendant in Howard, did not exhibit behavior which reasonably should have raised a question as to his ability to represent himself, or his competency to stand trial. Further, throughout trial, the defendant in Howard constantly exhibited numerous instances of paranoid behavior such as repeatedly expressing a belief that the allegations against him were the result of a conspiracy, and that his family members were the ones who committed the murder and framed him. The defendant even argued to the jury that one of the jurors may have committed the crime. Additionally, all four attorneys who attempted to represent the defendant suggested to the court that he was not competent to assist in his own defense.
¶ 9. We find nothing in the record to suggest that a competency hearing was warranted in this case, and Conerly failed to provide evidence that would support his assertion that the trial judge should have ordered the hearing sua sponte. Therefore, this issue lacks merit.
¶ 10. We further find that Conerly's ineffective assistance of counsel claim is similarly without merit. The record reflects that Conerly requested a court-appointed attorney on June 3, 2002, and thereafter the attorney filed several motions on Conerly's behalf before trial began. The attorney filed a waiver of arraignment on June 3, and signed an order entered on June 24 pursuant to an omnibus hearing. The attorney also filed a motion to allow the jury to view Conerly's vehicle. Although it is unclear at exactly what point Conerly chose to represent himself, the record does reflect that on the first day of trial, Conerly expressed his desire to the trial judge to represent himself. The record also reflects that Conerly waived his right to counsel, and his attorney was appointed to sit merely in an advisory capacity. "As stand-by counsel, [a defense attorney] is without authority, discretion or control, and the charge that he rendered constitutionally ineffective assistance is without merit." Estelle v. State, 558 So.2d 843, 847 (Miss.1990).

(2) Motion in Limine
¶ 11. Conerly's next allegation of error concerns the trial judge's refusal to grant his motion in limine to exclude evidence pertaining to a previous armed robbery for which he had not been convicted, and evidence concerning a gun found in his car after the chase.
¶ 12. "The relevancy and admissibility of evidence are largely within the discretion of the trial court, and reversal may be had only where that discretion has been abused." Parker v. State, 606 So.2d 1132, 1136 (Miss.1992). "[This] discretion must [however] be exercised within the boundaries of the Mississippi Rules of Evidence." Id.
¶ 13. Before trial began, Conerly made a motion in limine to prevent the State from mentioning the BOLO that stemmed *1106 from an alleged armed robbery in Louisiana, and to exclude the gun found in his car after the chase ended. The judge denied the motion and allowed both pieces of evidence to come in. The judge stated that the BOLO was a necessary part of the State's case because it gave police probable cause to stop Conerly in the first place. He [the judge] stated that he would give the jury a limiting instruction to only consider the BOLO in establishing the purpose for stopping Conerly. The record reveals, however, that the judge failed to give the instruction for reasons unexplained in the record.
¶ 14. We find that the trial judge did not abuse his discretion in admitting the BOLO and gun into evidence because these items were essential to the State's presentation of a complete and coherent story to the jury. "Evidence of a prior criminal activity on the part of one criminally accused is inadmissible where the prior offense has not resulted in a conviction." Levy v. State, 724 So.2d 405, 408(¶ 12) (Miss.1998). However, the State has a legitimate interest in telling a rational and coherent story of what happened. Id. "Where substantially necessary to present to the jury the complete story of the crime, evidence or testimony may be given though it may reveal or suggest other crimes." Id. Here, the admission of testimony about the BOLO and gun was necessary for the jury to get a full and complete picture of the facts as they existed at the time of the crime. Therefore, this issue lacks merit.

(3) Discovery Violation
¶ 15. Conerly next claims that the State's failure to disclose alleged exculpatory evidence prior to trial resulted in his receiving an unfair trial. The State counters that since Conerly failed to object at trial, this issue is waived.
¶ 16. Prior to trial, Conerly informed the judge that he wanted to "ask him about discovery." The trial judge instructed Conerly that he should object if the State tried introducing anything that was not furnished to him during discovery. The judge further informed Conerly that if something had not been disclosed, Conerly needed to make an objection and the judge would rule on it.
¶ 17. Conerly now claims for the first time on appeal that the State failed to disclose during discovery an offense report from Officer Huhn, an arrest warrant from the State of Louisiana, and photographs of Officer Simmon's vehicle after the chase. However, "failure to make a contemporaneous objection at trial constitutes a waiver of any error subsequently assigned." Moawad v. State, 531 So.2d 632, 634 (Miss. 1988). The record reveals that Conerly did not object to Officer Huhn's offense report on the basis that it was not presented during discovery, nor did Conerly object to the officer's testimony that Conerly hit his police car as well as another police car during the chase. Similarly, Conerly did not object to a fax of the arrest warrant from Louisiana, or the photographs of Officer Simmons's car. As a result, this issue is procedurally barred and not properly before the Court for consideration.

(4) Jury Instructions
¶ 18. Conerly contends that the trial court erred in failing to instruct the jury on the elements of aggravated assault. Conerly also argues that the trial court erred in refusing to grant his proposed instruction D-3 as a curative instruction for testimony concerning the BOLO. The State maintains that Conerly did not make an objection at trial, and therefore, did not preserve the issue for appeal. The State also submits that the *1107 jury was correctly instructed on the crimes of aggravated assault and simple assault.
¶ 19. We have thoroughly searched the record and do not find an instruction defining the elements of aggravated assault. If such an instruction was given, it is not in the record before us. We agree, however, with the State's assertion that Conerly did not object to the instructions that were given. The problem though is not with what was given but what was not given.
¶ 20. Before a conviction may stand the State must prove each element of the offense. Ballenger v. State, 761 So.2d 214, 217(¶ 15) (Miss.2000). Not only is this a requirement of the law of this State, but due process requires that the State prove each element of the offense beyond a reasonable doubt. Id.
¶ 21. The failure, however, to give an instruction on an element of a charge does not mean that the State failed to proved the element. Our supreme court has held that the failure to give an instruction on an element of a capital murder charge is subject to the harmless error analysis. Kolberg v. State, 829 So.2d 29, 51(¶ 43) (Miss. 2002). The instructions which were given in Kolberg did not include an instruction defining the underlying felony of felonious child abuse. Id. at (¶ 42).
¶ 22. Our case is different from Kolberg in that here the trial court did not give a single instruction on aggravated assault. The instruction for count two, the aggravated assault charge, reads as follows:
The Court instructs the jury that next you are to consider whether or not the defendant, Eldawaneli Tarloytauruss Conerly also known as Eldawain Conerly, is guilty of the charge of aggravated assault on a law enforcement officer as to count two. If the jury so finds unanimously and beyond a reasonable doubt then you should return a verdict of guilty as to aggravated assault on a law enforcement officer as to count two.
The Court further instructs the jury that if the jury is unable to unanimously agree beyond a reasonable doubt that the defendant is guilty of aggravated assault on a law enforcement officer as to count two, then the jury may consider whether or not the defendant is guilty of the lesser included offense of simple assault on a law enforcement officer.
If you find from the evidence in this case beyond a reasonable doubt, that on or about the 15th day of June, 2002, the defendant Eldawaneli Tarloytauruss Conerly also know as Eldawain Conerly did wilfully, unlawfully, feloniously, purposely and knowingly attempt by physical menace to put another, namely one Lee Cotton, a human being, in fear of imminent serious bodily harm, at a time when he, the said Lee Cotton, was then and there a duly appointed, sworn and acting law enforcement officer for the Walthall County Sheriff's Department, by then and there wilfully, unlawfully, feloniously, purposely and knowingly striking the motor vehicle driven by the said Lee Cotton with a motor vehicle driven by the said Eldawaneli Tarloytauruss Conerly also known as Eldawain Conerly, while he, the said Lee Cotton, was then and there acting within the scope of his duty and office as a law enforcement officer of Walthall County, Mississippi, as aforesaid, then you should find Eldawaneli Conerly also known as Eldawain Conerly guilty of simple assault on a law enforcement officer as to count two.
If the State has failed to prove any or all of the essential elements of the crime of simple assault on a law enforcement officer as to count two, then you should return a verdict of not guilty as to count two.
*1108 ¶ 23. The elements of aggravated assault are (1) attempting to cause or causing serious bodily injury to another purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life or (2) attempting to cause or purposely or knowingly causing bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm. Miss.Code Ann. § 97-3-7 (Supp. 2003).
¶ 24. Instructions were given which informed the jury of the elements of simple assault and the State's burden to prove every material element of the charges. The jury was also given this instruction relating to a deadly weapon:
The Court instructs the jury that the question of "what is a deadly weapon" is a question of fact for the jury. While the use of a motor vehicle ordinarily would not constitute the use of a deadly weapon, the jury may find that the use of a motor vehicle can constitute a deadly weapon if it can be used as a means or force likely to produce death.
While instructions are to be read and considered as a whole, the instructions when read and considered together did not inform the jury of the elements which it had to find before it could convict Conerly of aggravated assault.
¶ 25. Having determined that the jury was not instructed as to the elements of the charge of aggravated assault and that the problem was not cured by other instructions, we look to see if this error is harmless. The test for determining whether a constitutional error is harmless is whether "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Kolberg, 829 So.2d at 50(¶ 39) (quoting Neder v. United States, 527 U.S. 1, 15-16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)).
¶ 26. The crime of aggravated assault is not comprised of numerous or complex elements. And the facts of this case are simple. Conerly, in his vehicle while traveling at some significant rate of speed, knowingly and intentionally rammed police officers in theirs. It is self evident that one who does such an act is acting recklessly under circumstances manifesting extreme indifference to the value of human life. Therefore, although the trial court failed to instruct the jury of the elements of aggravated assault, we can say with confidence that it appears beyond a reasonable doubt that the absence of the element instruction did not cause or contribute to the jury reaching the verdict that it reached. Consequently, we find this error to be harmless. If the jury had not been instructed on simple assault and the evidence was slight, we might have a different situation, for the jury might have convicted Conerly of the greater offense not knowing that it could have convicted him of the lesser offense. But the evidence is overwhelming that Conerly used his car in a manner which clearly indicated that he was attempting to cause serious bodily injury with a deadly weapon (the car) or under circumstances manifesting extreme indifference to the value of human life.
¶ 27. Conerly also complains of being denied the following instruction:
The Court instructs the jury that no person may be convicted of a crime based upon his reputation or character. In order to convict the Defendant of the charges against him, the evidence in this case must prove beyond a reasonable doubt that he is guilty of that offense.
¶ 28. The State objected to the instruction on the basis that it was not applicable since there was no reputation and character evidence presented during trial. The trial judge denied the instruction. *1109 "The general rule is that all instructions must be supported by the evidence." Haggerty v. Foster, 838 So.2d 948, 954(¶ 14) (Miss.2002). "An instruction not supported by the evidence should not be given." Id. We find no error in the trial judge's ruling on this issue.
¶ 29. As to Conerly's argument that the trial judge erred in not giving sua sponte a limiting instruction, we likewise find no merit. Evidence of other crimes is admissible when necessary to tell a complete story to the jury. Levy v. State, 724 So.2d 405, 408(¶ 12) (1998). It was important that the jury understand why the officers were chasing Conerly. On these facts, it is doubtful that a limiting instruction was required. But even if one was required, the failure to give it was indeed harmless. "Harmless error analysis is applicable in cases where the trial court does not sua sponte give [a] limiting instruction when MRE 404(b) evidence is admitted." Webster v. State, 754 So.2d 1232, 1240 (¶ 22) (Miss.2000). "An error is harmless when it is apparent on the face of the record that a fair-minded jury could have arrived at no verdict other than that of guilty." Floyd v. City of Crystal Springs, 749 So.2d 110, 120(¶ 37) (Miss. 1999).

(5) Prosecutor's Arguments
¶ 30. Conerly argues that the prosecution's strategy of continuously referring to the armed robbery, and instructing the jury to hold this against him in both the prosecution's opening and closing statements violated his right to a fair trial. The State maintains that the armed robbery was not argued as a prior offense but as a reason for the chase, and that the trial judge had already ruled that it could be mentioned.
¶ 31. Any allegedly improper prosecutorial comment must be evaluated in context, taking into consideration the circumstances of the case when deciding the comment's propriety. Brooks v. State, 763 So.2d 859, 864(¶ 12) (Miss.2000). The test for determining if [an alleged] improper argument by the prosecutor to the jury requires reversal is "whether the natural and probable effect of the prosecutor's argument creates an unjust prejudice against the accused that results in a decision influenced by the prejudice." Id.
¶ 32. Evaluating the statements in the context in which they were made, we find that the prosecutor's statements did not create unjust prejudice against Conerly and did not result in a verdict influenced by prejudice. Likewise, although Conerly had not been convicted of the armed robbery charge, testimony touching upon the robbery was nevertheless essential to relaying to the jury a complete story regarding the chase. Again, although evidence of prior criminal activity is inadmissible where the prior offense has not resulted in a conviction, it nevertheless may be given when substantially necessary to present to the jury the complete story of a crime.

(6) Weight and Sufficiency of Evidence
¶ 33. Conerly final argument is that the jury's verdict was against the overwhelming weight of evidence and that the evidence is insufficient as a matter of law to sustain his conviction. Although Conerly indicates in the caption to this issue that the verdict was against the overwhelming weight of the evidence, the argument which he makes in support of the issue, goes to the sufficiency and not the weight of the evidence. However, we consider both arguments.
¶ 34. "The standard of review for a denial of a directed verdict, peremptory instruction, and a JNOV are identical." Hawthorne v. State, 835 So.2d 14, 21(¶ 31) *1110 (Miss.2003). A motion for a JNOV, as well as a motion for a directed verdict and request for a peremptory instruction, challenges the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). On the issue of legal sufficiency, reversal can only occur when evidence of one or more of the elements of the charged offense is such that "reasonable and fairminded jurors could only find the accused not guilty." Hawthorne, 835 So.2d at 21(¶ 31).
¶ 35. We find that ample evidence was offered by the State in support of Conerly's conviction. The undisputed evidence reveals that Conerly led police on a chase that spanned over two counties. The evidence also showed that the police attempted to stop Conerly numerous times, but he refused to stop, hitting three police cars in the process. Accepting the evidence in the light most favorable to the State, the jury was justified in finding Conerly guilty.
¶ 36. We now turn to the weight of evidence issue. As distinguished from a motion for a directed verdict or a JNOV, a motion for a new trial asks a court to vacate the judgment on the grounds related to the weight of the evidence. Smith v. State, 802 So.2d 82, 85-86(¶ 11) (Miss. 2001). Our standard of review for claims that a conviction is against the overwhelming weight of the evidence, or that the trial court erred in not granting a motion for a new trial, has been stated as follows:
[An appellate court] must "accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction "unconscionable injustice."
Todd v. State, 806 So.2d 1086, 1090(¶ 11) (Miss.2001) (quoting Crawford v. State, 754 So.2d 1211, 1222 (Miss.2000)).
¶ 37. For the reasons discussed in the foregoing section, we find no merit to this issue. It is sufficient to say that the evidence presented by the State in support of Conerly's conviction precludes any finding that an unconscionable injustice will occur if the verdict is allowed to stand.
¶ 38. THE JUDGMENT OF THE WALTHALL COUNTY CIRCUIT COURT OF CONVICTION OF COUNT ONE, SIMPLE ASSAULT ON A LAW ENFORCEMENT OFFICER, AND SENTENCE OF FIVE YEARS; COUNT TWO, AGGRAVATED ASSAULT ON A LAW ENFORCEMENT OFFICER, AND SENTENCE OF TWENTY YEARS; AND COUNT THREE, SIMPLE ASSAULT ON A LAW ENFORCEMENT OFFICER, AND SENTENCE OF FIVE YEARS, WITH SENTENCES TO RUN CONSECUTIVELY FOR A TOTAL OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE FIRST FIFTEEN YEARS TO SERVE AND THE LAST FIFTEEN YEARS ON POST-RELEASE SUPERVISION, AND PAYMENT OF $1,000 FINE AND FULL RESTITUTION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WALTHALL COUNTY.
KING, C.J., BRIDGES, P.J., LEE, MYERS, CHANDLER AND GRIFFIS, JJ. CONCUR. SOUTHWICK, P.J., NOT PARTICIPATING.
NOTES
[1] Officer Huhn testified that a rolling road block is when the officers try to get as many patrol cars ahead of the suspect as possible, so that they can surround or "box" the suspect in. He stated that once this happens, the officers will slow down or stop if they can to keep the suspect from harming the public or other officers.
[2] Officer Cotton testified that during the chase, Conerly also hit his car, and pointed a gun at him.