MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. Jeffrey Jackson was indicted for three counts of aggravated assault and one count of murder for a shooting that occurred at a nightclub in Shaw, Bolivar County, Mississippi. A Bolivar County
 
 *640
 
 Circuit Court jury convicted Jackson of all of the charges. He was sentenced to serve fifteen years on each of the two counts of aggravated assaults and twenty years on the other count of aggravated assault to run consecutively to his sentence of life on the murder conviction. Jackson now appeals arguing: (1) the trial court erred in granting a flight instruction to the jury; (2) the weight of the evidence does not support the verdicts; (3) the evidence is not legally sufficient to sustain a murder conviction; and (4) the introduction of hearsay was prejudicial and a result of ineffective assistance of counsel. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On February 21, 2003, at approximately 1:30 a.m., a fight erupted inside Roy Ventura’s Lounge (Roy’s Lounge) in Shaw, Bolivar County, Mississippi. The participants in the fight were forced outside of Roy’s Lounge by its security personnel, where the fight resumed. During the melee, witnesses testified that someone pulled a gun and fired between ten to twelve shots into the crowd that had gathered outside of Roy’s Lounge. Four people were struck by the shots: one bullet grazed the temple of Jennifer Diggins (Diggins) and went through her ear; Car-mencita Davis (Davis) was shot as she tried to reenter Roy’s Lounge when the shots began; Bernice Smith (Smith) was shot in the leg, causing permanent damage. All three of these victims survived the shooting and were able to testify at trial. The fourth victim, Eric Mack, was shot in the abdomen, and ultimately died. The state pathologist testified that Mack bled to death from the gunshot wound to his abdomen.
 

 ¶ 3. The Shaw Police Department arrived at Roy’s Lounge shortly after the shots were fired. Witnesses informed the police that the suspects had fled the scene in a car. The police pursued the car, and caught up to it after the car overheated and pulled over to the side of the road. The police detained the three occupants of the vehicle: Dennis Coleman, Carl Holl-ingsworth, and Jeffrey J. Jackson. The police then searched Roy’s Lounge and the area where the cars had fled. They recovered ten spent nine-millimeter shell casings and several bags of marijuana. The police were unable to recover the weapon used in the shooting.
 

 ¶ 4. Several witnesses positively identified Jackson as the shooter. Tangrea White (Tangrea), Bernice White (Bernice), and Trevino McGee (Trevino) all testified that they each witnessed Jackson fire shots in the parking lot of Roy’s Lounge. They testified that they did not see any other person firing a weapon that night.
 

 ¶ 5. Subsequently, Jackson was indicted for three counts of aggravated assault and one count of murder. At the end of a two-day jury trial, Jackson was found guilty of all four counts, and he sentenced as follows: fifteen years on each of the two counts of aggravated assault, twenty years on one count of aggravated assault, life for the count of murder. Jackson was also order to pay $3,019 in restitution for the aggravated assault of Diggins, and $1,100 in restitution for the aggravated assault of Davis. All of the aggravated assault convictions were ordered to run concurrently with each other, with those sentences to run consecutively to the murder conviction, all in the custody of the Mississippi Department of Corrections. Jackson then filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial and a motion for a sentence reduction. The trial court denied both of these motions. Aggrieved by his convictions and sentences, Jackson appeals.
 

 
 *641
 
 DISCUSSION
 

 I. Whether the trial court erred in granting' a flight instruction.
 

 ¶ 6. Over the objection of Jackson’s defense counsel, the trial court granted the following flight instruction:
 

 Flight is a circumstance from which guilty knowledge and fear may be inferred. If you find from the evidence in this case beyond a reasonable doubt that the Defendant JEFFREY J. JACKSON did flee or go into hiding, such flight or hiding is to be considered in connection with all other evidence in this case. You will determine from all of the facts whether the flight was from a conscious sense of guilt or whether it was caused by other things, and give it such weight as you think it is entitled to in determining the guilt or innocence of defendant.
 

 Jackson argues this instruction was prejudicial to his case. He also argues that the jury was confused about how to apply the instruction because Jackson was absent from the proceedings on the second day of his trial. He surmises the jury could not discern which flight the court was instructing the jury to consider, his flight from the scene or his absence from court.
 

 ¶ 7. In determining whether error lies in the granting of jury instructions, the instructions must be read as a whole.
 
 Johnson v. State,
 
 823 So.2d 582, 584(¶ 4) (Miss.Ct.App.2002). “When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.”
 
 Id.
 

 ¶ 8. Our supreme court has held that “flight is admissible as evidence of consciousness of guilt.”
 
 Fuselier v. State,
 
 702 So.2d 388, 390(¶ 4) (Miss.1997) (citing
 
 Williams v. State,
 
 667 So.2d 15, 23 (Miss.1996)). However, a flight instruction “is appropriate only where that flight is unexplained and somehow probative of guilt or guilty knowledge.”
 
 Id.
 
 (quoting
 
 Reynolds v. State,
 
 658 So.2d 852, 856 (Miss.1995)). Therefore, evidence of flight is inadmissa-ble where there is an independent reason for the flight.
 
 Id.
 

 ¶ 9. “[E]vidence of flight or escape is admissible as an exception to Mississippi Rule of Evidence 404(b) in order to show guilty knowledge.”
 
 Shaw v. State,
 
 915 So.2d 442, 447(¶ 18) (Miss.2005). Our supreme court has held that “evidence of flight is admissible under Mississippi Rule of Evidence 404(b), but it must be filtered through Rule 403, which states that ‘[a]l-though relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.’ ”
 
 Id.
 
 (quoting M.R.E. 403).
 

 ¶ 10. The supreme court has found:
 

 the following “explanations” were substantial enough so that a flight instruction was not proper: defendant was an escapee; [the defendant] was driving a stolen car[; and the defendant] was leaving based on threats from another person or from potential danger from [the] victim himself. The common factor is that ... it would have been illogical for a defendant not to have run.
 

 Austin v. State,
 
 784 So.2d 186, 195(¶ 32) (Miss.2001).
 

 ¶ 11. Jackson offers three reasons on appeal why he fled the scene of the accident.
 
 [1]
 
 First, Jackson argues that he and the other two suspects had been shot at by someone at Roy’s Lounge. He points to an injury to his neck as supportive evi
 
 *642
 
 dence of someone shooting at him. Second, there was marijuana in the car. Third, he feared retaliation. He concludes these reasons fully explain his flight, and accordingly, a flight instruction should not have been given by the trial court.
 

 ¶ 12. The record reveals that there was contradictory testimony with regard to whether someone was shooting at Jackson, the injury he sustained on his neck, and the allegation that someone was going to retaliate against Jackson.
 

 ¶ 13. Officer Willie Bethley of the Shaw Police Department was one of the officers who responded to the shooting and subsequent chase of Jackson. He testified that upon inspection of the fleeing car, he did not see any bullet holes or markings on the car. Tangrea, Bernice, and Trevino testified that no one, other than Jackson, fired a weapon that night. Contrary to what Jackson argues on appeal, this evidence supports a finding that no one was firing a weapon at Jackson.
 

 ¶ 14. Jackson also claims on appeal that the injury on his neck was evidence of someone firing at him as he left Roy’s Lounge. There is no evidence to support this assertion. It is an unfounded and unsupported assertion. The events that led to the shooting began as a fight between Mack, Jackson, and several of their friends. Bernice, testified that he was also fighting with Jackson, and during their fight, he grabbed Jackson by the collar of his shirt. This would explain the injury to the back of Jackson’s neck. Officer Bethley also testified that none of the three suspects requested any medical attention during their detention, and he did not notice any blood emanating from the suspects. Murray Roark, the chief investigator with the Bolivar County Sheriffs Department, characterized the injury to Jackson as a “scratch” and not a serious injury. He also testified that the mark on Jackson’s neck was not a straight line, and unless we are dealing with the infamous “magic bullet,” it would not be indicative of a bullet grazing Jackson’s neck.
 

 ¶ 15. Likewise, Jackson’s explanation that he was in fear of retaliation is contradicted and unsupported by the evidence. No one testified that Jackson was pursued by anyone after he began shooting and fled the scene. The testimony reveals the antithesis of this; when Jackson began shooting, everyone ran or drove off from the scene. The supreme court has found error for a flight instruction that was given when the defendant was claiming fear of retribution as his explanation.
 
 See Tran v. State,
 
 681 So.2d 514, 519 (Miss.1996);
 
 Banks v. State,
 
 631 So.2d 748, 751 (Miss.1994). However, these cases are clearly distinguishable from the case at bar because the defendants in those cases were arguing self-defense, which automatically eliminates the possibility of a flight instruction.
 
 Banks,
 
 631 So.2d at 751. Jackson is not arguing self-defense in the present case; his defense was that someone else was the shooter.
 

 ¶ 16. Similarly, “[f]ailure to appear for trial may be considered flight.”
 
 Waldon v. State,
 
 749 So.2d 262, 267(¶ 13) (Miss.Ct.App.1999). Jackson was absent from the second day of his trial. He argues that, due to his absence from trial, the jury was confused as to how to apply the flight instruction.
 

 ¶ 17. The trial court asked defense counsel several times, outside the presence of the jury, where Jackson was and why Jackson was not present. Defense counsel did not have an answer for the trial court.
 
 [2]
 
 
 *643
 
 To cure any confusion the jury may have had with regard to the flight instruction, the trial court, in jury instruction C-l, advised the jury that they were only to consider the facts and evidence presented in open court. The trial court stated that the evidence the jury was to consider “consisted of the testimony and statements of the witnesses and the exhibits offered and received.” The trial court did not highlight Jackson’s absence from the second day of his trial to the jury. Moreover, Jackson should not be able to profit from his own flight. If we were to grant Jackson’s request and award a new trial, we face a slippery slope of every defendant fleeing his or her trial in hopes of receiving a new trial on appeal. Nevertheless, we find that the trial court’s instruction to the jury clarified any confusion they may have harbored with regard to the flight instruction and eliminated any prejudice to Jackson.
 

 ¶ 18. We also find that the evidence of Jackson’s flight was probative of Jackson’s guilt and his guilty knowledge. Officer Bethley testified that he and another officer arrived at Roy’s Lounge shortly after the shots were fired.
 
 [3]
 
 When they arrived at Roy’s Lounge, Jackson and the other two suspects had already fled the scene. The officers pursued and located the vehicle traveling at a high rate of speed, going the wrong way down a one-way street. They were able to catch up to the car only because it overheated. After detaining the suspects, Officer Bethley and another officer searched the area that night and the next morning for the weapon, but they were unable to locate it. However, they did recover a bag of marijuana that had been thrown out of the vehicle. Given these facts, it is very evident that Jackson knew he had shot someone at Roy’s Lounge, and he was trying to flee the area, only to be stopped when his car overheated. Thus, we find that the flight circumstances have considerable probative value.
 

 ¶ 19. The current scenario is not similar to any of the explanations above that the supreme court has deemed to be reasonable; we find that Jackson’s proffered reasons are illogical and contradicted by the evidence. Furthermore, the circumstances surrounding Jackson’s flight have considerable probative value. Accordingly, we find that the trial court did not err in giving a flight instruction. This issue is without merit.
 

 II. Whether the weight of the evidence supports of all Jackson’s convictions.
 

 ¶ 20. “In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.”
 
 Herring v. State,
 
 691 So.2d 948, 957 (Miss.1997) (citing
 
 Thornhill v. State,
 
 561 So.2d 1025, 1030 (Miss.1989)). During such an inquiry, we afford the State “the benefit of all favorable inferences that may reasonably be drawn from the evidence.”
 
 Griffin v. State,
 
 607 So.2d 1197, 1201 (Miss.1992). “There is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to this Court.”
 
 King v. State,
 
 857 So.2d 702, 731 (¶ 104) (Miss.2003) (citing
 
 Branch v. State,
 
 347 So.2d 957, 958 (Miss.1977)). Reversal on these grounds is appropriate only when “the verdict is so contrary to the overwhelming weight of the evidence that to
 
 *644
 
 allow it to stand would sanction an unconscionable injustice.”
 
 Johnson v. State,
 
 642 So.2d 924, 928 (Miss.1994) (citing
 
 McNeal v. State,
 
 617 So.2d 999, 1009 (Miss.1993)).
 

 ¶ 21. Jackson argues that the weight of the evidence does not support all four of his convictions. He argues that the inconsistencies in witnesses’ statements about the color of his attire on the night of the shooting and the fact that Roy’s Lounge had a metal detector at its front entrance, which made it impossible to get a gun into Roy’s Lounge, prove that he could not have been the shooter that night at Roy’s Lounge.
 

 ¶ 22. Witnesses described the col- or of the shooter’s sweatshirt as “light-colored,” black, and gray. When Jackson was apprehended, he was wearing a blue sweatshirt. However, “Conflicting testimony does not evince overwhelming evidence; [w]here the verdict turns on the credibility of conflicting testimony and the credibility of the witnesses, it is the jury’s duty to resolve the conflict.”
 
 Brown v. State,
 
 995 So.2d 698, 702(¶ 13) (Miss.2008) (citing
 
 Nicholson v. State,
 
 523 So.2d 68, 71 (Miss.1988)).
 

 ¶ 23. We find that the weight of the evidence supports the jury’s verdict. Three eyewitnesses testified that Jackson was the only person firing a weapon in the parking lot, and one witness testified that he saw Jackson shoot Mack. Jackson was one of three individuals who fled the scene in a speeding car immediately following the shooting. Several witnesses testified that the shooter had braids in his hair; Jackson had braids in his hair on the night of the shooting. As to the color of Jackson’s shirt, the shooting occurred around 1:30 a.m., and it would have been difficult to discern whether the sweat shirt was black, gray, or blue.
 

 ¶ 24. Jackson also argues that it was impossible for him to bring a gun into Roy’s Lounge because it had metal detectors and security guards patting down patrons as they entered. However, there was testimony that the metal detectors might not have worked, and that the security guards were inattentive to the metal detector’s alarms when Roy’s Lounge was crowded, as it was on the night of the shooting. Additionally, White testified that he was one of the first persons to go out of Roy’s Lounge, and that Jackson was already outside when White arrived, leaving time for Jackson to return to his ear and retrieve the gun.
 

 ¶ 25. The jury heard the conflicting testimony regarding the color of Jackson’s shirt and the use of metal detectors, and the jury resolved the conflicting testimony in favor of the State. We find the jury’s conviction is fully supported by the evidence and does not “sanction an unconscionable injustice.” Accordingly, this assignment of error is without merit.
 

 III. Whether the evidence is legally sufficient to sustain Jackson’s murder conviction.
 

 ¶ 26. Jackson argues the facts of this case support a manslaughter conviction, and not a murder conviction. The trial court specifically asked Jackson’s counsel whether he wanted the court to give a manslaughter instruction. He declined. Jackson can hardly argue on appeal that the jury erred in not convicting him of manslaughter when he refused the opportunity to have a manslaughter instruction read to them. Nevertheless, we will address his argument.
 

 ¶ 27. In
 
 Bush v. State,
 
 895 So.2d 836, 843(¶ 16) (Miss.2005), the supreme court set out the standard of review for legal sufficiency as follows:
 

 In
 
 Carr v. State,
 
 208 So.2d 886, 889 (Miss.1968), we stated that in considering whether the evidence is sufficient to
 
 *645
 
 sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows “beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.”
 

 We view the evidence in the light most favorable to the prosecution, and we will affirm if any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.
 
 Id.
 
 (quoting
 
 Jackson v. Virginia,
 
 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
 

 ¶28. Without repeating the last issue word-for-word, we find there was sufficient evidence to support Jackson’s murder conviction.
 
 [4]
 
 Jackson’s actions are the epitome of an act eminently dangerous to others and evincing a depraved heart, without regard for human life. He exited Roy’s Lounge after being in a fight with Mack and several of his friends. Jackson pulled a gun and fired ten to twelve shots into a crowded parking lot, hitting four people.
 

 ¶29. Viewing the evidence in a light most favorable to the prosecution, we find that the evidence is sufficient to support the conviction of murder. Therefore, this assignment of error is without merit.
 

 IV. Whether Jackson received ineffective assistance of counsel.
 

 ¶ 30. Jackson argues that he received ineffective assistance of counsel due to his trial counsel not objecting to an alleged hearsay statement made by Officer Roark. Jackson argues this statement bolstered the prosecution’s case against him.
 

 ¶ 31. A claim of ineffective assistance of counsel is judged by the standard stated in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The two inquiries under that standard are: (1) whether counsel’s performance was deficient, and if so, (2) whether that deficient performance was prejudicial to the defendant’s defense in the sense that the defendant is deprived of a fair trial.
 
 Id.
 
 at 687, 104 S.Ct. 2052. “To show prejudice, the claimant must demonstrate that, but for his attorney’s errors, there is a reasonable probability that a different result would have occurred.”
 
 Watts v. State,
 
 981 So.2d 1034, 1039(¶ 12) (Miss.Ct.App.2008). The burden of proving both prongs of
 
 Strickland
 
 is on the defendant, “who faces a ‘rebuttable presumption that counsel’s performance falls within the broad spectrum of reasonable professional assistance.’ ”
 
 Walker v. State,
 
 703 So.2d 266, 268(¶ 8) (Miss.1997) (citations omitted).
 

 ¶ 32. Relevant to this issue, Officer Roark testified that after a witness viewed a photographic lineup, that person identified Jackson as the shooter. Officer Roark was asked, “do you recall who [the person who viewed a photographic lineup] identified?” Officer Roark responded, “Jeffrey Jackson.” Neither party determined which witness identified Jackson as the shooter. Nevertheless, we can dismiss this argument as non-hearsay under Mis
 
 *646
 
 sissippi Rule of Evidence 801(d)(1)(C) if that identifying witness was subject to cross-examination or as cumulative evidence under Mississippi Rule of Evidence 103 if the statement was hearsay because of the other in-court identifications of Jackson.
 
 [5]
 

 ¶ 33. In conclusion, we find the failure to object to part of Officer Roark’s testimony did not meet the requirements of
 
 Strickland.
 
 Jackson’s result would not have changed if his attorney had objected to the testimony. Three eyewitnesses identified Jackson in court as the only shooter at Roy’s Lounge. The evidence was more than sufficient to convict Jackson of the charged crimes. Therefore, this assignment of error is without merit.
 

 ¶ 34. THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, AGGRAVATED ASSAULT, AND SENTENCE OF FIFTEEN YEARS; COUNT II, AGGRAVATED ASSAULT, AND SENTENCE OF FIFTEEN YEARS; COUNT III, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS; AND COUNT IV, MURDER, AND SENTENCE OF LIFE, WITH SENTENCES IN COUNTS I, II, AND III TO RUN CONCURRENTLY WITH EACH OTHER AND CONSECUTIVELY TO THE SENTENCE IN COUNT IV, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY RESTITUTION OF $3,019 IN COUNT I AND $1,100 IN COUNT II, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Jackson did not testify at trial.
 

 [2]
 

 . Similarly, Jackson does not offer an explanation on appeal for his absence on the second day of trial.
 

 [3]
 

 . Officer Bethley testified that he was at the Shaw police station when the shots were fired. He stated that Roy's Lounge and the Shaw Police Department were very close to each other; in fact, one could see Roy's Lounge from the police station.
 

 [4]
 

 . Murder is defined by Mississippi Code Annotated section 97-3-19(1) (Rev.2006). Under that statute, to obtain a murder conviction, the State had to prove that Jackson killed Mack with deliberate design to effect his death or killed him “in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual.”
 

 [5]
 

 . Mississippi Rule of Evidence 801(d)(1)(C) provides that a statement is not hearsay if ”[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is one of identification of a person made after perceiving him.”