BARNES, J.,
for the Court:
¶ 1. Christopher Harrell was convicted for the murder of Frank Damico and for possession of a firearm by a felon. For the capital murder conviction, he was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC); for the possession charge, he was sentenced to ten years, to be served concurrently with his capital murder sentence. On appeal, Harrell argues that errors in the jury instructions and in the admission of evidence warrant a new trial.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. In March 2008, twenty-year-old Harrell was involved in an aggravated assault in Holmes County, Mississippi. Since he was on probation, he escaped to Jackson, Mississippi, to hide from law enforcement. While staying with a female acquaintance in Jackson, he met Frank Damico, a fifty-four-year-old man, who regularly assisted his elderly neighbors *311 with errands. One neighbor had even loaned Damico her brother’s blue Mercury Grand Marquis in exchange for helping her with errands, taking her to church, and taking her to see her brother at the hospital.
¶ 3. On April 6, 2008, Harrell obtained a ride from Damico, presumably to go to a nearby convenience store. A few hours later, Damico’s friends noted that he was missing and contacted the police. Two days later, on April 8, 2008, Harrell called his mother, Martha Engalmann, to tell her that he was coming home to Holmes County. Aware that her son was wanted by law enforcement, Engalmann alerted the local sheriff that Harrell would be at her house. Early the next morning, Holmes County sheriffs deputies went to Engalmann’s home and found Harrell sleeping. A handgun was near the bed. Law enforcement recovered a blue Mercury behind a church near Engalmann’s home; the lining in the trunk had been removed. Harrell had possession of the keys.
¶ 4. On April 15, 2008, Damico was found dead, his body lying in a creek in Holmes County. It was later determined that Damico had died from a gunshot wound to his head. In a series of statements given between April 9, 2008, and June 26, 2008, Harrell gave conflicting stories as to how he came into possession of the car and what had happened to Damico. On April 10, 2008, before Damico’s body had been found, Harrell admitted that he “was at Frank’s house on West Haven” and that Damico had given him a ride to a motel to meet up with a guy named “Shorty.” Harrell claimed Damico left with Shorty, and when Shorty returned with the car, Dami-co was not with him. Yet, in another statement, Harrell claimed that he had never heard of Damico and that Shorty told him he got the car from a guy during a drug deal. He said Shorty gave him the car to use. Then, on May 8, 2008, Harrell said that Shorty left with Damico, and when he returned, Damico’s body was in the trunk. Harrell said he saw the body in the trunk, and he showed Shorty where to dump the body in Holmes County.
¶ 5. However, in Harrell’s June 19, 2008 statement to the Mississippi Bureau of Investigations (MBI), he changed his story again, claiming Damico drove him to see Shorty so that Damico could purchase drugs. Harrell claimed that Shorty had shot Damico in the head two times and that he helped Shorty put the body in the trunk. In his final interview on June 26, 2008, Harrell said Damico took him to see Shorty, and Shorty shot Damico during an argument.
¶ 6. On August 5, 2010, a Hinds County Circuit Court jury convicted Harrell of Count I, capital murder while in the commission of a robbery, and Count II, possession of a firearm by a felon. For Count I, he was sentenced to life imprisonment in the custody of the MDOC; for Count II, he was sentenced to ten years, to be served concurrently with the sentence in Count I. Harrell filed a motion for a judgment notwithstanding the verdict (JNOV), or in the alternative, a new trial. The circuit court denied the motion.
¶ 7. On appeal, Harrell challenges the circuit court’s admission of witness testimony and the giving of three jury instructions. Finding no reversible error, we affirm the circuit court’s judgment.
I. Whether Harrell was denied due process as a result of the circuit court’s failure to give a jury instruction on the underlying felony of robbery.
¶ 8. Harrell argues it was error for the circuit court to admit Jury Instruction S-l, as there was no additional instruction given containing the elements of the underly-
*312 ing felony of robbery. Jury Instruction S-1 stated, in pertinent part:
The Defendant, Christopher Harrell, has been charged in the indictment with the offense of Capital Murder in Count One. The Court instructs the jury that if you find from the evidence in this case beyond a reasonable doubt that:
1. The Defendant, Christopher Harrell;
2. On or about April 6, 2008, in the First Judicial District of Hinds County, Mississippi;
3. Did purposely, knowingly and fe-loniously did murder one, Frank Damico, a human being;
4. with deliberate design or while in the commission of an act eminently dangerous evincing a depraved heart, without the authority of law;
5. and not in necessary self defense!;]
6. at a time when he[,] the said Christopher Harrell!,] was then and there engaged in the commission of the crime of robbery of the said Frank Damicol,]
then you shall find the defendant, guilty of Capital Murder in Count One.
(Emphasis added).
¶ 9. “[J]ury instructions are to be read together and taken as a whole with no one instruction taken out of context.” Davis v. State, 980 So.2d 951, 958 (¶ 12) (Miss.Ct.App.2007) (quoting Austin v. State, 784 So.2d 186, 192 (¶18) (Miss.2001)). If the jury instructions, when read as a whole, “fairly announce the law of the case and create no injustice, no reversible error will be found.” Jackson v. State, 28 So.3d 638, 641 (¶ 7) (Miss.Ct.App.2009) (quoting Johnson v. State, 823 So.2d 582, 584 (¶ 4) (Miss.Ct.App.2002)).
¶ 10. There was no specific objection to the instruction at trial on this ground, nor did the defense submit an instruction on the elements of robbery.[1] Cases from the Mississippi Supreme Court have rejected an appellant’s claim on this issue when there has been a failure to object or request the appropriate instruction. See Gray v. State, 472 So.2d 409, 416 (Miss.1985) (overruled on other grounds) (defendant’s failure to object to instructions offered by the State and failure to submit an instruction on the elements of underlying felony “operates to waive any objection in this issue”). In Ballenger v. State, 667 So.2d 1242, 1252 (Miss.1995), the supreme court considered a case similar to the present one, where no instruction was given to the jury regarding the elements of robbery, the underlying felony to the capital murder charge. The court held it “incumbent upon Ballenger to request an appropriate instruction regarding the elements of robbery.” Id. Therefore, “[t]he combined failure to object or to request an appropriate instruction operate[d] to waive any objection on this issue.” Id. (quoting Gray, 472 So.2d at 416).
¶ 11. Thus, we must find plain error in order to reverse the circuit court’s judgment.
In order to prevail under the plain-error doctrine, an appellant must show that there was an error in the trial court and that the error resulted in a “manifest miscarriage of justice.” Furthermore, this Court may only apply the plain-error doctrine when the error complained of affects a defendant’s fundamental or substantial rights.
*313 Blunt v. State, 55 So.3d 207, 211 (¶ 16) (Miss.Ct.App.2011). “The granting of a jury instruction that does not fully instruct on the elements of the crime amounts to plain error.” Davis, 980 So.2d at 958 (¶ 12) (citing Berry v. State, 728 So.2d 568, 571 (¶ 6) (Miss.1999)); see also Robinson v. State, 42 So.3d 598, 606 (¶ 27) (Miss.Ct.App.2010) (lack of jury instruction regarding elements of crime “impacts” defendant’s “fundamental right to due process.” (citing Shaffer v. State, 740 So.2d 273, 282 (¶ 31) (Miss.1998))).
¶ 12. Shortly after Ballenger, the supreme court decided Hunter v. State, 684 So.2d 625 (Miss.1996), a case where an instruction on the elements of robbery, the underlying offense, was submitted by the defense but refused by the trial court. Id. at 636. The Hunter court found that “even though the defendant did not present an acceptable instruction, the State was obligated to do so.” Id. Therefore, the case was reversed and remanded for “[t]he failure to instruct the jury on the elements of the underlying crime of robbery.” Id. at 637. As a result of the court’s ruling in Hunter, Ballenger submitted a motion for post-conviction relief (PCR), arguing that the intervening law meant the procedural bar to his PCR should not apply. The supreme court agreed in Ballenger v. State, 761 So.2d 214 (Miss.2000), noting the similarities between the issues in Ballenger I and Hunter and the discrepancies in the outcomes of those cases. In a 5-4 decision, the supreme court vacated Ballenger’s sentence and remanded for a new trial. Id. at 220.
¶ 13. In another case, Shaffer, 740 So.2d at 282 (¶ 33), the supreme court reiterated its position, finding that the failure to include the phrase “evincing a depraved heart, regardless of human life,” from a jury instruction was reversible error. The supreme court noted: “Instructing the jury on every element of the charged crime is so basic to our system of justice that it should be enforced by reversal in every case where inadequate instructions are given, regardless of a failure to object or making a different objection at trial.” Id. at (¶ 31). In Moses v. State, 795 So.2d 569, 574 (¶22) (Miss.Ct.App.2001), this Court found plain error in jury instructions that were generic and did not relate to specific charges in a multi-count indictment:
There simply are no shortcuts available to the due process requirements of the criminal process, which include, at a minimum, a complete disclosure of the nature of the charges through the indictment, specific proof by competent evidence showing the commission of the act beyond a reasonable doubt, and a submission of the ease for decision to a jury that is fully instructed as to both the law pertaining to the essential elements of the crime and those critical facts it must find to have occurred as to each charge in order to convict.
(Emphasis added).
¶ 14. However, in Kolberg v. State, 829 So.2d 29 (Miss.2002), the supreme court revisited its decisions in Hunter, Ballen-ger, and Shaffer. In Kolberg, there was no jury instruction given concerning the underlying felony of child abuse. Neither party addressed this issue at trial, and Kolberg did not raise it in his motion for a new trial. It was not until the State mentioned the issue in its response to Kol-berg’s motion for a new trial that Kolberg brought the issue to the court’s attention, citing Hunter. Id. at 46 (¶ 24). The circuit court noted Kolberg’s failure to object but ruled on the merits, finding that the jury was fully instructed, and denied the motion for a new trial. Id. at (¶ 25). On appeal, the supreme court stated:
*314 [B]ecause the trial court is responsible for assuring that the jury is fully and properly instructed on all issues of law relevant to the case, because there can be no doubt that error was committed in failing to instruct the jury on the underlying felony, and because of the current status of the law in this State on this crucial issue, we address, on the merits, the issue of whether the trial court’s failure to instruct the jury in this capital murder case on the underlying felony of child abuse was reversible error.
Id. at (¶ 26).
¶ 15. The Kolberg court concluded, however, that there was “absolutely no way that this lack of information on the part of the jury affected the outcome of this case.” Id. at 51 (¶ 42). Looking at the “overwhelming evidence” of guilt, the supreme court held that “the error in failing to instruct the jury on the underlying felony of child abuse was harmless error because ‘it is clear beyond a reasonable doubt that it did not contribute to the verdict.’ ” Id. at (¶ 43) (quoting Conley v. State, 790 So.2d 773, 793 (¶72) (Miss.2001)). However, the court was quick to warn:
[W]e implore the trial courts to be alert to the need to assure that the jury is adequately instructed on the underlying felony in a capital murder trial. We also acknowledge that our decisions in many cases are “fact-driven” thereby meaning that, even in applying a “harmless error analysis,” had the facts in this case been different, the result here certainly could have been different. We make this statement as a caveat in future capital murder prosecutions under the provisions of Mississippi] Code Annotated section] 97 — 3—19(2) (e) — (f), that should the trial court fail to instruct the jury on the underlying felony, even in applying a “harmless error analysis,” this Court may still be compelled, based on the facts and/or the particular underlying felony, to find such failure to be reversible error.
Id. at 50-51 (¶40); see also Conerly v. State, 879 So.2d 1101, 1108 (¶ 26) (Miss.Ct.App.2004) (finding harmless error because “although the trial court failed to instruct the jury of the elements of aggravated assault, we can say with confidence that it appears beyond a reasonable doubt that the absence of the element instruction did not cause or contribute to the jury reaching the verdict that it reached.”).
¶ 16. As the supreme court noted in Kolberg, each ease is “fact-driven” and “must stand on its own facts.” Kolberg, 829 So.2d at 48, 50 (¶¶ 34, 40) (quoting Carleton v. State, 425 So.2d 1036, 1040 (Miss.1983)). The elements of robbery are: (1) the felonious taking of “the personal property of another, [ (2) ] in his presence or from his person and [ (3) ] against his will, [ (4) ] by violence to his person or by putting such person in fear of some immediate injury to his person[.]” Miss.Code Ann. § 97-3-73 (Rev.2006). Harrell was in possession of Damico’s blue Mercury when law enforcement arrested him. While Harrell told a variety of different stories regarding the death of Dam-ico and his possession of the vehicle, none of the versions could have Harrell guilty of participating in the murder, but not the robbery. The State proved every element of the underlying offense of robbery, and there was overwhelming evidence that Harrell was guilty of murder. Harrell has not provided this Court with any substantive argument that the verdict would have been different had the underlying elements of robbery been included in the jury instruction.
¶ 17. Consequently, based on the rulings in Kolberg and Conerly, we find there was no “manifest miscarriage of justice” *315 here that warrants a finding of plain error. The failure to instruct the jury on the elements of the underlying felony of robbery did not affect the verdict and was harmless error. This issue is without merit.
II. Whether the circuit court erred in admitting Jury Instructions S-5 and S-6.
¶ 18. Harrell claims that the circuit court abused its discretion in giving Jury Instruction S-5, which concerned unexplained flight from law enforcement, and Jury Instruction S-6, which concerned aiding and abetting. Jury Instruction S-5 read:
The Court instructs the Jury that flight is a circumstance from whieh[,] in the absence of a reasonable explanation therefor, guilty knowledge and fear may be inferred. If you find from the evidence in this case, beyond a reasonable doubt[,] that the defendant, Christopher Harrell[,] did flee or go into hiding after killing Frank Damico, then the flight of Christopher Harrell is to be considered in connection with all other evidence in this case. You will determine from all the facts whether the flight was from a conscious sense of guilt of whether it was caused by other things, and give it such weight as you think it is entitled to in determining the guilt or innocence of Christopher Harrell.
At trial, defense counsel argued that the flight instruction should not be admitted, as any flight was related to Harrell’s armed robbery charge in Durant. Counsel further stated: “So I’m not real sure how they’re getting flight out of this because there’s no allegation of flight from Hinds County when they left Hinds County with a body to dispose of it. That’s not flight.”
¶ 19. Our supreme court has held “it is a well-established principle that flight is admissible as evidence of consciousness of guilt.” Fuselier v. State, 702 So.2d 388, 390 (¶ 4) (Miss.1997) (citation omitted). However, a flight instruction “is appropriate only where that flight is unexplained and somehow probative of guilt or guilty knowledge.” Id. (quoting Reynolds v. State, 658 So.2d 852, 856 (Miss.1995)). “When determining whether a flight instruction is appropriate, ... two considerations are paramount: (1) only unexplained flight merits a flight instruction, and (2) flight instructions are to be given only in cases where that circumstance has considerable probative value.” Id. (citations omitted). If there is an independent reason for the flight, then the evidence of flight is inadmissable. Id.
¶ 20. Harrell was wanted by law enforcement in Holmes County, which is why he had been hiding out in Jackson. Harrell admitted that he went back to Holmes County, with Damico’s body in the trunk of the car, for the purpose of dumping the body to hide the evidence of the murder. Harrell claims that returning to Holmes County to dispose of the body “provided an independent reason, such that no flight instruction could be properly given.” We disagree. A defendant’s 'attempt to dispose of evidence “show[s] that the defendant was an active participant in the flight from the officers.” English v. United States, 25 A.3d 46, 50-51 (D.C.2011). “[F]light includes fleeing, even a short distance, to wherever a defendant thinks is safe to dispose of evidence.” State v. Hatten, 297 Mont. 127, 991 P.2d 939, 949 (1999). Harrell’s return to Holmes County was not unexplained; his purpose was to dispose of the murder evidence. Furthermore, as the State argued: “[Harrell’s] flight from Jackson had no possible explanation other than that it was on account of his guilty knowledge”; thus, his flight was probative of his guilt. Ac *316 cordingly, we find no error in the giving of Jury Instruction S-5.
¶ 21. Jury Instruction S-6 was an “aiding and abetting” instruction. It stated:
The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.
If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.
Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.
Of course, mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.
In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.
Harrell argues that the “record is devoid of any evidence showing [he] deliberately sought participation with another in the killing of Frank Damico with the intent to bring about that result.” However, Harrell did not make any objection on this basis at trial; rather, defense counsel only contended that an aiding and abetting instruction could not be given in a case where there is only one defendant. “[A]n objection on one or more specific grounds constitutes a waiver of all other grounds.” Broim v. State, 682 So.2d 340, 350 (Miss.1996). Therefore, Harrell has failed to preserve this error on appeal.
¶ 22. Notwithstanding the procedural bar, we find no error in the giving of this instruction. “[I]f a person is actually or constructively present at the offense, due to his participation, he is an aider and abettor[.]” Hooker v. State, 716 So.2d 1104, 1110 (¶ 20) (Miss.1998). Unlike a conspiracy, “aiding and abetting does not require a common plan or scheme[.]” Shumpert v. State, 935 So.2d 962, 971 (¶31) (Miss.2006). In his later statements to the MBI, Harrell admitted that he was present when Damico was shot and that he assisted “Shorty” in concealing and disposing of the body. It was also undisputed that Harrell possessed the stolen blue Mercury Marquis. Thus, we find there was sufficient evidence to support the circuit court’s giving of the “aiding and abetting” jury instruction.
III. Whether it was prejudicial error to admit Henry Peters’s testimony.
¶ 23. Henry Peters, an MDOC inmate, is a “writ writer” within the prison system, a so-called “jailhouse lawyer,” who assists other inmates with legal advice and *317 research. Peters was housed in the Rankin County Correctional Facility with Harrell. Peters testified at trial that Harrell confided in him that he shot Damico in the head. Although the defense objected to Peters’s testimony, the court allowed it, and Harrell now claims that the admission of Peters’s testimony was prejudicial error. Harrell acknowledges that Peters is not licensed as an attorney, but he claims Peters was acting as an unauthorized legal advisor to him. Therefore, Harrell contends that Peters is held to the same confidentiality standard as a licensed attorney. See M.R.E. 502.
¶24. Under Mississippi Rule of Evidence 502(a)(3), “[a] ‘lawyer’ is a person authorized, or reasonably believed by the client to be authorized, to engage in the practice of law in any state or nation.” At trial, Peters admitted that he was not licensed to practice law; he merely assisted prisoners with legal research. Peters said he was questioned by Harrell regarding how to transfer a case to another jurisdiction. As the State notes, most prisoners are well aware that writ writers are not lawyers; in this case, Peters did not hold himself out to be a licensed attorney. Furthermore, under Rule 6(a) of the Mississippi Rules of Discipline, attorneys who are “convicted in any court of any state or in any federal court” are suspended from the practice of law. Peters could not, therefore, be an attorney authorized to render legal assistance to others and be an inmate in prison. We find absolutely no merit to Harrell’s contention that his admission to the writ writer is entitled to protection under the attorney-client privilege.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF COUNT I, CAPITAL MURDER, WHILE IN THE COMMISSION OF A ROBBERY, AND COUNT II, POSSESSION OF A FIREARM BY A FELON, AND SENTENCES OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT POSSIBILITY OF PAROLE OR PROBATION ON COUNT I, AND TEN YEARS ON COUNT II, TO BE SERVED CONCURRENTLY WITH THE SENTENCE IN COUNT I, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. RUSSELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. At trial, defense counsel merely commented that she did not think there was any legal authority regarding the lesser-included offense contained in the instruction. As the lesser-included-offense language is not pertinent to this issue, it was not included above.