# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01098-COA

**SHERMAN E. BILLIE, SR. A/K/A SHERMAN BILLIE A/K/A SHERMAN BILLIE, SR.**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/10/2014 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES EDWIN SMITH III |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | MARK SHELDON DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF SEXUAL BATTERY AND SENTENCED TO SERVE FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 08/23/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE ISHEE, P.J., CARLTON AND JAMES, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1. Sherman Billie was convicted of sexual battery and sentenced to serve a term of fifteen years in the custody of the Mississippi Department of Corrections, with credit for jail time served. Billie now appeals his conviction and sentence, arguing that the trial court erred in finding that his written confession was made voluntarily, intelligently, and knowingly. Billie further asserts that his written confession was inadmissible as fruit of the poisonous

tree due to the alleged inadmissibility of his prior oral confession. Finding no error in the trial court's ruling of admissibility, we affirm.

**FACTS**

¶2. J.B.[1] moved to Neshoba County in April 2010 at the age of fourteen to live with his stepfather and younger brother. A few months after J.B. moved into his stepfather's home, J.B.'s stepfather's brother, Billie, also moved into the home. Billie was approximately twenty-eight years old at the time. J.B. claimed that beginning in September 2010, Billie began molesting him over a period of several months. J.B. stated that the molestation ended after Billie moved out of the house.

¶3. In September 2013, J.B. informed the Neshoba County Sheriff's Department about the molestation. On October 7, 2013, the Neshoba County Sheriff's Department arrested Billie. Billie claims that immediately prior to his arrest, he arrived home from working a night shift with the Choctaw Police Department and consumed four sleeping pills.

¶4. The record reflects that at the sheriff's office, Investigator Ralph Sciple advised Billie of his *Miranda*[2] rights, which Billie waived. Investigator Sciple testified that he proceeded to question Billie about the allegations made by J.B. Billie made an oral confession to Investigator Sciple at approximately 12:25 p.m., admitting that he performed oral sex on J.B., who was fourteen years old at the time. The record reflects that Officer Jonathan Dearing also witnessed Billie's confession. Investigator Sciple testified at trial that at the time that

---

[1] To protect the anonymity of the minor victim of sexual abuse, we use initials to represent his name.

[2] *Miranda v. Arizona*, 384 U.S. 436, 478 (1966).

Billie made his confession, he did not appear to be under the influence of drugs, including "sleeping medication," or alcohol. Investigator Sciple informed the trial court that he did not obtain a written confession from Billie at that time, because Billie "was very distraught."

¶5. The record shows that Billie spent the night in jail, and the next morning at approximately 8:30 a.m., Investigator Sciple again interviewed Billie. The record reflects that Billie signed another form, again waiving his *Miranda* rights. The evidence presented at trial reflects that Billie then provided a written statement wherein he confessed to performing oral sex on J.B. A grand jury indicted Billie for sexual battery pursuant to Mississippi Code Annotated section 97-3-95(1)(c) (Rev. 2014).

¶6. At a trial held on July 7, 2014, the jury heard testimony from J.B. and Investigator Sciple. The trial court held a suppression hearing outside of the presence of the jury to determine the admissibility of Billie's confession. During the suppression hearing, Investigator Sciple testified when he first interviewed Billie on October 7, 2013, Billie "was very distraught because he knew he was fixing to lose his job, he was fixing to lose his family, and he was very remorseful at that time." As a result, he interviewed Billie again the next morning, October 8, 2013, at approximately 8:30 a.m. Billie again signed a waiver of rights and then he provided a written confession to Investigator Sciple. Investigator Sciple testified at trial that Billie did not appear to be under the influence of drugs or alcohol at the time of the interview. The record reflects that no other sheriff's deputies were present during this interview, and Investigator Sciple made no recording of the confession. When asked by the State if it is "uncommon to allow inmates to have a cool-down period before giving a

3

written statement," Investigator Sciple answered, "No, sir."

¶7.    Billie and his wife, Kultilda Billie, also testified at the suppression hearing.  Kultilda provided testimony that Billie took two sleeping pills immediately prior to his arrest.  Kultilda explained that the sleeping pills "make [Billie] sleepy" such that he "can't function things right[,]" and that while he is on the medication, "he can't recognize things."  Kultilda testified that the effects of the sleeping pills last for twelve hours, but can last longer if Billie does not sleep.

¶8.    During the suppression hearing, Billie testified that he actually took four sleeping pills on the morning of October 7, 2013, after he arrived home from working the night shift.  He testified that Investigator Sciple and another detective arrived at his house shortly after he lay down to sleep.  Billie testified: "[T]he whole time, my mind wasn't aware.  I didn't know what was going on, and I was half naked when they came in."  When questioned about the waiver-of-rights form that he signed on October 7, 2013, Billie testified that due to the sleeping medication, he did not recall writing a statement or signing a form.

¶9.    Billie also testified at the suppression hearing that on the morning of October 8, 2013, he still felt the effects of the sleeping medication because he was unable to sleep in the jail.  Billie stated that he remembered Investigator Sciple informing him that his bond was set at $190,000.  Billie testified that Investigator Sciple offered to "do [him] a favor" because Investigator Sciple was "good with the judge."  According to Billie, Investigator Sciple stated that if Billie would provide a written confession,  Investigator Sciple could bring the bond amount down to $70,000 or $80,000.  Billie testified that he "free[-wrote] whatever

4

[came] to mind because [he] just wanted to go home" and see his wife and son. Billie asserted during the suppression hearing that he would not have written the confession if Investigator Sciple had not assured him that he could convince the judge to lower Billie's bond. Billie also claimed that Investigator Sciple was "lying" when he testified that Billie did not appear to be under the influence of drugs or alcohol during the interview.

¶10. At the conclusion of the suppression hearing, the trial judge allowed the statement to be admitted, ruling that Billie was properly Mirandized and that he knowingly and intelligently recognized his rights and voluntarily waived them. After Investigator Sciple completed his trial testimony, Billie's counsel moved for a directed verdict, which the trial court denied. The jury subsequently found Billie guilty of sexual battery. The trial court sentenced Billie to serve a term of fifteen years in the custody of the Mississippi Department of Corrections, with credit for jail time served.

¶11. Billie filed a motion for a new trial, which the trial court denied. Billie now appeals, arguing that his confession was involuntary and thus inadmissible, rendering his trial constitutionally unfair.

**STANDARD OF REVIEW**

¶12. On appeal, we will reverse the trial court's determination regarding whether an accused's confession has been intelligently, knowingly, and voluntarily given only "when such determination is manifestly wrong." *Glasper v. State*, 914 So. 2d 708, 716 (¶27) (Miss. 2005). Additionally, this Court "will not disturb the trial court's determination on the admissibility of a confession unless the trial court applied an incorrect legal standard,

5

committed manifest error, or rendered a decision which was contrary to the overwhelming weight of the evidence." *Id*.

¶13.    When reviewing challenges to the sufficiency of the evidence on appeal, this Court views the evidence in the light most favorable to the State. *Varnado v. State*, 67 So. 3d 835, 837 (¶6) (Miss. Ct. App. 2011). We recognize that "the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed." *Id*. (internal quotation marks omitted) (citing *Brown v. State*, 48 So. 3d 614, 616 (¶6) (Miss. Ct. App. 2010)). Additionally, "if any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction." *Id*.

## DISCUSSION

¶14.    Billie claims the trial court erred by failing to suppress his confession. Billie claims that he consumed four sleeping pills immediately prior to his arrest. As a result of the effect from his consumption of the sleeping pills, Billie argues that the totality of the circumstances failed to establish that he intelligently, knowingly, or voluntarily confessed to the police. Billie alleges that no videotaped evidence exists to support a prima facie case by the State that Billie was not under the effects of the sleeping pills when he made his confession. Billie also claims that Investigator Sciple told him that he would reduce Billie's bond only if Billie would write a statement confessing to molesting J.B. Billie further argues that if, however, this Court finds that his written confession was made intelligently, knowingly, or voluntarily,

6

the State failed to sufficiently "purge the primary taint" from the first oral confession, thus rendering the written statement inadmissible under the "fruit of the poisonous tree" doctrine.

¶15.    In *Glasper*, 914 So. 2d at 716 (¶27), the supreme court explained that since "the trial court sits as the fact-finder when determining the issue of whether an accused's confession has been intelligently, knowingly and voluntarily given, we will only reverse the trial court's determination of this issue when such determination is manifestly wrong." (citing *Manix v. State*, 895 So. 2d 167, 180 (¶39) (Miss. 2005)). The supreme court in *Glasper* further provided that when reviewing the admission or exclusion of an accused's confession at trial, trial judges are afforded "the appropriate deference" as the ultimate fact-finder, explaining that "the trial judge . . . is the only one amongst the members of the judiciary who will ever have the opportunity to not only hear the testimony, but to also observe the demeanor of the witnesses as they testified at the suppression hearing." *Id*. at 720 (¶28). We also recognize that "there is no doubt that a confession is admissible only after the State has proven beyond a reasonable doubt that the accused's confession was voluntary by showing that such confession was not the product of promises, threats or inducements." *Id*. at 717 (¶31). Furthermore, "[w]here, on conflicting evidence, the lower court admits a statement into evidence[,] this Court generally must affirm." *Carter v. State*, 956 So. 2d 951, 957 (¶10) (Miss. Ct. App. 2006) (citing *Morgan v. State*, 681 So. 2d 82, 87 (Miss. 1996)).

¶16.    After hearing testimony from Billie and Kultilda during the suppression hearing, the trial judge found that Billie "was given the *Miranda* rights properly . . . ; that he knowingly [and] intelligently recognized his rights and voluntarily waived them without hopes of

7

reward, lenience, [or] promises of any kind; and that the statement [is] admissible." The trial judge also observed that Billie "has acknowledged that he executed the waiver of his rights and also the statement, stating that he wrote it." However, the trial judge, unsatisfied with the hearing at that point, suggested that the State go forward with Investigator Sciple's testimony.

¶17.    During the suppression hearing, Investigator Sciple provided testimony denying that he offered to reduce Billie's bond in return for a written confession. Investigator Sciple explained, "I don't even think the bond was set at that time, so it couldn't have got[ten] reduced yet." Investigator Sciple denied possessing any knowledge about the amount set for Billie's bond, and he further denied telling Billie that he could convince the judge to reduce the amount.[3]

¶18.    Investigator Sciple also testified that he did not provide Billie with any information regarding what to write in his written confession; he stated that all of the information in the written statement came from Billie. The trial judge ultimately overruled the defense's objection and allowed Billie's October 8, 2013 written confession to be admitted into evidence. As stated, this Court must generally affirm "[w]here, on conflicting evidence, the lower court admits a statement into evidence[.]" *Carter*, 956 So. 2d at 957 (¶10).

¶19.    Billie additionally argues that when Investigator Sciple took Billie's written statement on October 8, 2013, the written statement "was based on an inadmissible oral statement given

---

[3] Regarding Billie's claim that Investigator Sciple should have recorded his interview with Billie, "the use of [video or audio recorders] is not presently required under Mississippi law[.]" *Brown v. State*, 983 So. 2d 1059, 1066 (¶25) (Miss. Ct. App. 2008).

less than 24 hours before[,] on October 7." Billie thus claims that the State failed to purge the written statement of the primary taint stemming from the inadmissible prior oral statement; therefore, his written confession should have been suppressed by the trial court.

¶20. The State maintains, however, that Billie is procedurally barred from arguing on appeal that his written statement was inadmissible as fruit of the poisonous tree. The State argues that, during his trial, Billie failed to raise the argument that his statement should be suppressed as fruit of the poisonous tree of the first oral statement.

¶21. We have repeatedly held that an appellant's "[f]ailure to raise an issue at trial bars consideration by the appellate court." *Glasper*, 914 So. 2d at 721 (¶30) (citing *Smith v. State*, 729 So. 2d 1191, 1201 (¶42) (Miss. 1998)). However, "errors affecting fundamental rights are exceptions to the rule that questions not raised in the trial court cannot be raised for the first time on appeal." *Rowland v. State*, 42 So. 3d 503, 506 (¶10) (Miss. 2010); *see also Read v. State*, 430 So. 2d 832, 837 (Miss. 1983). Here, Billie cites to *Miranda v. Arizona*, 384 U.S. 436, 478 (1966), and alleges that "a confession stemming from [a] custodial interrogation of the defendant is not admissible unless it demonstrates the use of procedural safeguards to secure the privilege against self-incrimination."

¶22. We recognize that the supreme court has "rejected the notion that an illegally obtained confession necessarily requires the exclusion of a subsequent voluntary confession." *Keller v. State*, 138 So. 3d 817, 849 (¶69) (Miss. 2014). The supreme court explained that "[t]he remedy for coercive interrogation practices is exclusion of the statements in which the coercion was present. It does not require the exclusion of all subsequent interrogations that

9

are preceded by proper *Miranda* warnings and are not coercive." *Id*. (quoting *Byrom v. State*, 863 So. 2d 836, 861 (¶72) (Miss. 2003)). Furthermore, we recognize that "the fruit of the poisonous tree doctrine is defeated where the confession is judged admissible." *Yates v. State*, 467 So. 2d 884, 887 (Miss. 1984).

¶23. In his brief, Billie claims that Investigator Sciple took Billie's second written statement on October 8 "only after realizing that the previous oral statement was invalid." However, Investigator Sciple testified that after Billie waived his *Miranda* rights on October 7, 2013, Billie became "distraught" during the interview when he realized that he may lose his job and family. As a result, Investigator Sciple waited until the next morning, October 8, 2013, to continue the interview and to obtain a written confession from Billie. Our review of the transcript fails to reveal any testimony provided by Investigator Sciple suggesting that he thought Billie's oral statement on October 7 was invalid.

¶24. After hearing testimony from Investigator Sciple, Billie, and Kultilda during the suppression hearing, the trial court admitted the written confession into evidence. Our review of the record reveals no abuse of discretion by the trial court in admitting Billie's confession into evidence. *See generally Glasper*, 914 So. 2d at 720 (¶28). In finding sufficient evidence exists to support Billie's guilty verdict, we affirm the conviction and sentence. *See Varnado*, 67 So. 3d at 837 (¶6).

¶25. **THE JUDGMENT OF THE NESHOBA COUNTY CIRCUIT COURT OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

10

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**